**LAW OFFICES OF K.E. RICHMAN LLP**
Kim E. Richman
ker@kerichman.com
875 Avenue of the Americas, 18th Floor
New York, New York 10001
Tel: (212) 687-8291
Fax: (212) 687-8292

*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELVIS SOTO-MUNIZ,<br><br>      Plaintiff,<br><br>  vs.<br><br>NEW JERSEY DEPARTMENT OF CORRECTIONS, THE HEALTH SERVICES UNIT, SOUTH WOODS STATE PRISON, DR. ALLAN MARTIN and "JOHN DOE" #1-5 (said names being fictitious, as the true names are presently unknown), Individually and in their Official Capacities.<br><br>      Defendants. | CV10- 1980<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>BLOCK, J.<br><br>AZRACK, M.J. |

Plaintiff, Elvis Soto-Muniz, by his attorney, K. E. Richman, complaining of the Defendants, respectfully alleges as follows:

### PRELIMINARY STATEMENT

1. Plaintiff bring this action for compensatory damages, punitive damages and attorney's fees pursuant to 42 U.S.C. §§ 1983, 1988, for the wrongful acts of Defendants New Jersey Department of Corrections, South Woods State Prison, Dr. Allan Martin and "John Doe" #1-5 (said names being fictitious, as the true names are presently unknown),

1

as employees of the State of New Jersey, all acting under color of state law and pursuant to their authority, in violation of Plaintiff's rights, as said rights are secured by said statutes and the Constitutions of the State of New Jersey and the United States.

## JURISDICTION

2. This action is brought pursuant to 42 U.S.C. §§ 1983, 1988, and the First, Eighth and Fourteenth Amendments to the United States Constitution.

3. Jurisdiction is invoked herein pursuant to the aforementioned statutory and constitutional provisions, and pursuant to 28 U.S.C. §§ 1331 and 1343, this being an action seeking redress for the violation of Plaintiff's constitutional and civil rights.

## VENUE

4. This Court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. §1332(a), because the aggregate claims of the Plaintiff exceed the sum or value of $75,000.00, and there is diversity of citizenship between Plaintiff and Defendants.

## TRIAL BY JURY

5. Plaintiff demands a trial by jury on each and every one of his claims as pled herein pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

6. At all times relevant hereto, Plaintiff, Elvis Soto-Muniz, was incarcerated in state run facilities in New Jersey. Plaintiff Elvis Soto-Muniz is a citizen of New York because he is domiciled in Staten Island, New York and has no intention of changing his domicile.

7. At all times relevant hereto, Defendant New Jersey Department of Corrections falls under the auspices of the State of New Jersey and owns, operates, manages, directs and controls South Woods State Prison, which employs the other named Defendants.

8. At all times relevant hereto, Defendant New Jersey Department of Corrections falls under the auspices of the State of New Jersey, establishes Defendant Mental Health Services Unit policy regarding medical, dental, nursing, pharmacy and mental health care of inmates held in state custody, including South Woods State Prison, which employs the other named Defendants.

9. At all times relevant hereto, Defendant South Woods State Prison also falls under the auspices of the State of New Jersey and Defendant New Jersey Department of Corrections, which employs the other named Defendants.

10. At all times relevant to this action, Defendant Dr. Allan Martin is and was an employee of South Woods State Prison and acting under color of state law.

11. At all times relevant hereto, "John Doe" #1-5 (said names being fictitious, as the true names are presently unknown) were employees, entities, individuals or organizations which were responsible for Plaintiff's medical treatment while incarcerated.

12. At all times relevant hereto and in all their actions described herein, said Defendants were acting under color of the statutes, ordinances, regulations, policies, customs and usages of the New Jersey Department of Corrections, The Health Services Unit and South Woods State Prison, pursuant to their authority as employees, servants and agents of the South Woods State Prison within the scope of employment and incidental to their otherwise lawful duties and functions as employees, servants, agents and medical practitioners.

13. New Jersey Department of Corrections and South Woods State Prison were responsible for the hiring, training, supervision, discipline, retention and promotion of its employees, servants, agents and medical practitioners.

3

## FACTS

14. On or about May 8, 2008, Plaintiff Elvis Soto-Muniz, at the time a 41 year-old white male, was incarcerated at Bergen County Jail and receiving medical care at Bergen County Regional Hospital. After receiving treatment for ulcerative colitis, Mr. Soto-Muniz was released from that hospital with a clean bill of health after he was deemed to have responded very well to treatment. Ultimately, due to the deliberate medical indifference of the Defendants, Mr. Soto-Muniz was left with no other option than to have his colon and rectum removed and a bag permanently strapped to his body to collect fecal matter.

15. In or about June 2008, Plaintiff Elvis Soto-Muniz was awaiting transfer from Bergen County Jail to a New Jersey State Prison. After a short stay at Central Reception and Assignment Facility ("CRAF"), Plaintiff was transferred to South Woods State Prison in order to provide him the highest quality medical care available in a New Jersey correctional facility.

16. Upon arriving at South Woods State Prison, Mr. Soto-Muniz's chart reflected that he needed a blood test, was suffering from dehydration and needed to receive intravenous fluids to treat his dehydration. These instructions were placed in Plaintiff's file at CRAF and, accordingly, the medical staff at South Woods State Prison were made fully aware of Plaintiff's medical condition.

17. During Mr. Soto-Muniz's first visit to the South Woods State Prison Medical Facility ("Medical Facility"), the doctors and nurses failed to locate a vein, effectively draw blood or properly hydrate him. No further attempts by the doctors or nurses were made to give Plaintiff intravenous fluids or take a standard blood test, despite the instructions from the

medical staff at CRAF. After Mr. Soto-Muniz met with Dr. Allen Martin, Defendant Martin sent Plaintiff back to general prison population instead of keeping him at the Medical Facility for treatment and observation.

18. After being returned to general population at South Woods State Prison, Plaintiff's health deteriorated. Plaintiff continued to fill out numerous medical request forms, asking to see a doctor and receive treatment. Despite these requests, Plaintiff was not returned to the Medical Facility, but was rather taken multiple times to the general population medical center where they attempted to draw blood. Regardless of the numerous attempts by the general population medical center, no blood was successfully drawn nor was Plaintiff given intravenous fluids. As a result of this failure to administer proper treatment to the Plaintiff, the staff in the general population medical center ultimately sent him to Dr. Martin's Medical Facility to receive treatment multiple times. However, each time Plaintiff arrived at the Medical Facility for treatment he was simply sent back to general prison population upon Defendant Martin's orders. Plaintiff was also subjected to verbal insults by Dr. Martin in his numerous attempts to receive proper medical attention.

19. Finally after two weeks, Plaintiff was returned to see Defendant Martin a final time. At this point, Plaintiff is wheelchair-bound, suffering from extreme rectal bleeding and has lost a significant amount of weight as a result of losing blood and being unable to eat. Nurse Green at the Medical Facility ultimately was able to draw blood.

20. The results of the blood test were so alarming after months of improper medical attention that Plaintiff was immediately transferred to an outside hospital on August 6,

2008. At St. Francis Medical Center, Plaintiff was given a blood transfusion to hydrate him and treat severe anemia. Plaintiff received over three pints of blood.

21. After receiving the blood transfusion, Plaintiff was informed that due to the extreme dehydration and the lack of treatment for his chronic rectal bleeding over a protracted period of time, he now had no option than to have a two-part surgery for a total colectomy with omentectomy - removal of his colon and rectum in their entirety.

22. The staff at St. Francis Medical Center had to stabilize Plaintiff's health condition before the first of two surgeries could be performed. Plaintiff spent more than a week recuperating and being treated for severe dehydration, anemia and untreated ulcerative colitis, among other things, before his first surgery was performed on or about August 15, 2008. During his fist surgery, Plaintiff underwent a total abdominal colectomy and endoileostomy. Plaintiff received a permanent ileostomy appliance. In layman's terms, Plaintiff's colon was removed and he had a bag permanently attached to the outside of his body to collect fecal matter.

23. After this surgery, Plaintiff was returned to South Woods State Prison to recuperate and await his second planned surgery on or about November 21, 2008. During this second surgery, Plaintiff received a proctocolectomy, a loop ileostomy and treatment for complications from the first surgery. In other words, his rectum was removed.

24. After completion of his two surgeries, Plaintiff suffered from a pulmonary embolism (blood clot), infarction, pulmonary atelectasis (collapse) in his lungs and received a filter in the artery in his leg. Plaintiff suffered further dehydration while at the South Woods Medical Facility. Due to this dehydration that again went untreated, Plaintiff suffered

from kidney failure, sever septicemia, septic shock, candidasis of the esophagus, and paralytic ileus.

25. As a result of Defendants' actions, Plaintiff suffered extreme pain and discomfort, extended periods of rectal bleeding, nausea, vomiting, lost his colon, lost his rectum, suffered kidney failure, anemia and weight loss of over 40 pounds. As a result of these injuries Plaintiff received multiple surgeries, is still having trouble gaining weight, has an ileostomy bag, has suffered severe mental and emotional damage and has required extensive medical treatment. Plaintiff's quality of life has been decimated and he will be facing health issues for the rest of his life as a result of Defendants' actions.

26. In particular, as a direct result of Defendants' actions, the Plaintiff has sustained the following severe injuries:

- Acute and chronic untreated infection and bleeding of the rectum, requiring the Plaintiff to spend more than six months undergoing two consecutive surgeries, including multiple emergency room visits and months of rehabilitation;

- Acute exacerbation of ulcerative colitis necessitating a total colectomy with omentectomy;

- Candidasis of the esophagus;

- Bacteremia, severe sepsis and septic shock;

- Septicemic due to E. Coli;

- Triple lumen catheter infection;

- Chronic untreated dehydration, nausea, vomiting and anemia;

- Renal failure and weight loss;

- Dysphagia;

- Odynophagia;

- Renal failure secondary to sepsis;

- Paralytic ileus;

- Pulmonary embolism and infarction;

- Atelectasis;

- Chronic pulmonary weakness, pain and tenderness

27. Moreover, the aforesaid injuries to Plaintiff have required him to ingest the following medications, including, but not limited to, the following: Xopenex and Atrovent nebulizer; Lopressor; Nexium; Lovenex; Dilaudid; and Percocet.

28. The aforesaid injuries to Plaintiff will be permanent, and as a result thereof, Plaintiff will have permanent pain, discomfort, diminished range of motion, severe limitation and loss of function, power and use, stiffness, irritation, tenderness and soreness to and about the aforesaid injured parts and areas.

29. That the foregoing injuries directly affected the skin, bones, tendons, veins, tissues, nerves, muscles, joints, blood vessels and ligaments of the injured parts and produced functional and organic disturbances, sympathetic and radiating to surrounding areas.

30. That the injuries abovementioned and to the adjacent and surrounding areas hereinabove mentioned and each of the effects of these injuries as hereinabove mentioned are permanent. That, solely by reason of the aforesaid, this Plaintiff sustained serious and severe personal injuries, including, but not limited to, acute and advanced infection of the esophagus, colon, rectum, lungs and kidneys, which necessitated multiple long-term hospitalizations and extensive rehabilitation.

31. Defendants New Jersey Department of Corrections, The Health Services Unit and South Woods State Prison, as policymakers in the training and supervision of Defendant

employees, have pursued a policy and practice of deliberate indifference to Plaintiff's medical needs and constitutional rights.

32. In particular, Defendants have failed to properly supervise Plaintiff's welfare by engaging in a course of conduct that created an unreasonable risk to Plaintiff's health as described herein. Defendants were well aware based upon Plaintiff's medical charts, file and history that Defendants' policies and practices created an unreasonable risk to Plaintiff's health and civil liberties. Nonetheless, Defendants remained indifferent to that risk by repeatedly sending Plaintiff back to the general prison population and failing to provide proper medical treatment. The serious medical and constitutional injuries endured by the Plaintiff would not have resulted had Defendants' existing policies and practices not been in place and employed.

33. As described herein, Defendants' failed to adequately respond to Plaintiff's repeated requests for medical attention and this pattern of neglect under Defendants' existing policies and practices is what caused harm to the Plaintiff-- physically, psychologically and constitutionally. The risk of harm in which Plaintiff was exposed to, and the injuries he ultimately sustained, was significant and was all as a result of the direct and proximate causation of the practices and policies employed by the Defendants.

### FIRST CLAIM FOR RELIEF: <u>DEPRIVATION OF FEDERAL CIVIL RIGHTS</u>

34. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs above with the same force and effect as if fully set forth herein.

35. All of the aforementioned acts of Defendants, their agents, servants and employees were carried out under color of state law.

9

36. All of the aforementioned acts deprived Plaintiff Elvis Soto-Muniz, of his rights, privileges and immunities guaranteed to citizens of the United States by the Eighth and Fourteenth Amendments to the Constitution of the United States and in violation of 42 U.S.C. § 1983.

37. The acts complained of were carried out by the aforementioned individual Defendants in their capacities as employees of the New Jersey Department of Corrections, The Health Services Unit and South Woods State Prison, with the entire actual and/or apparent authority attendant thereto.

38. The acts complained of were carried out by the aforementioned individual Defendants in their capacities as employees, pursuant to the customs, usages, practices, procedures, and rules of New Jersey Department of Corrections, The Health Services Unit and South Woods State Prison, all under the supervision of ranking supervisors of said departments.

39. Defendants, collectively and individually, while acting under color of state law, engaged in conduct which constituted a custom, usage, practice, procedure or rule of his/her respective authority, which is forbidden by the Constitution of the United States.

40. By these actions, these Defendants have deprived Plaintiff of rights secured by the Eighth and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983, for which the Defendants are individually liable.

## SECOND CLAIM FOR RELIEF:
## DELIBERATE INDIFFERENCE TO PLAINTIFF'S SERIOUS MEDICAL CONDITION IN VIOLATION OF THE UNITED STATES CONSTITUTION

41. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs above with the same force and effect as if fully set forth herein.

42. As described above, Defendants acted with deliberate indifference to Plaintiff's serious medical needs, by among other things, failing to properly treat Plaintiff, despite the fact that Defendants were aware of, or, but for their deliberate indifference, should have been aware of, the Plaintiff's serious medical needs.

43. Defendants consciously disregarded the serious medical risk posed by Plaintiff's injuries by among other things, failing to immediately provide proper treatment as dictated by the Plaintiff's medical condition.

44. As a consequence thereof Plaintiff, Elvis Soto-Muniz, has been injured.

### THIRD CLAIM FOR RELIEF: MUNICIPAL LIABILITY

45. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs above with the same force and effect as if fully set forth herein.

46. Defendants and "John Doe #1-5" (said names being fictitious, as the true names are presently unknown) engaged in cruel and unusual punishment with respect to Plaintiff Elvis Soto-Muniz, despite a complete lack of cause against him, notwithstanding their knowledge that said violations would jeopardize Plaintiff's well-being, safety and constitutional rights.

47. The acts complained of were carried out by the aforementioned individual Defendants in their capacities as employees and officials, with the entire actual and/or apparent authority attendant thereto.

48. The acts complained of were carried out by the aforementioned individual Defendants in their capacities as employees and officials pursuant to the customs, policies, usages, practices, procedures and rules of New Jersey Department of Corrections, The Health

Services Unit and South Woods State Prison, all under the supervision of ranking supervisors of said departments.

49. The aforementioned customs, policies, usages, practices, procedures and rules of New Jersey Department of Corrections, The Health Services Unit and South Woods State Prison included, but were no limited to, offering inferior medical treatment.

50. The foregoing customs, policies, usages, practices, procedures and rules of New Jersey Department of Corrections, The Health Services Unit and South Woods State Prison constituted a deliberate indifference to the safety, well-being and constitutional rights of Plaintiff Elvis Soto-Muniz.

51. The foregoing customs, policies, usages, practices, procedures and rules of New Jersey Department of Corrections, The Health Services Unit and South Woods State Prison were the direct and proximate cause of the constitutional violations suffered by Plaintiff Elvis Soto-Muniz, as alleged herein.

52. The foregoing customs, policies, usages, practices, procedures and rules of New Jersey Department of Corrections, The Health Services Unit and South Woods State Prison were the moving force behind the constitutional violations suffered by Plaintiff Elvis Soto-Muniz, as alleged herein.

53. Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating the constitutional rights of Plaintiff Elvis Soto-Muniz.

54. Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate employees, and were directly responsible for the violation of Plaintiff's constitutional rights.

55. Defendants New Jersey Department of Corrections, The Health Services Unit and South Woods State Prison, as policymakers in the training and supervision of Defendant employees, have pursued a policy and custom of deliberate indifference to the rights of persons in their domain who suffer violation of their right to expression and freedom from retaliation for expressing medical needs, cruel and unusual punishment and deprivation of due process of law in violation of the First, Eighth and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983, and the Constitution and laws of the State of New Jersey.

56. All of the foregoing acts by Defendants deprived Plaintiff Elvis Soto-Muniz, of federally protected rights, including, but not limited to, the right to expression of his medical needs without retaliation; not to have cruel and unusual punishment imposed upon him; and not to be deprived of life without due process of law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and prays for the following relief, jointly and severally, against the Defendants:

1. Special and compensatory damages in the amount of two million and five hundred thousand dollars ($2,500,000.00);

2. Punitive damages in the amount of two million and five hundred thousand dollars ($2,500,000.00);

3. Reasonable attorney's fees and costs; and

4. Such other and further relief as this Court deems just and proper.

DATED:   New York, New York
         April 30, 2010

Respectfully submitted,

Kim E. RICHMAN, ESQ.
ker@kerichman.com
Law Office of K. E. Richman LLP
875 Avenue of the Americas, 18th Floor
New York, NY 10001
(212) 687-8291

*Attorney for Plaintiff*
