APPENDIX

Case 1:10-cv-03617-RBK-KMW Document 76-1 Filed 01/08/13 Page 2 of 11 PageID: 731

Correctional Medical Services, Inc. v. State, Dept. of Treasury, Not Reported in A.2d...

2010 WL 1425064
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of New Jersey,
Appellate Division.

CORRECTIONAL MEDICAL SERVICES, INC., Plaintiff–Appellant,

v.

STATE of New Jersey, DEPARTMENT OF the TREASURY, Division of Purchase and Property, Contract Compliance Audit Unit; Alice Small, Acting Director, Division of Purchase and Property, in official capacity only; and State of New Jersey, Department of Corrections, Defendants–Respondents.

Submitted March 3, 2010. | Decided April 8, 2010.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L–2771–08.

**Attorneys and Law Firms**

Ballard Spahr Andrews & Ingersoll, LLP, attorneys for appellant (Denise M. Keyser and Neal Walters, on the brief).

Paula T. Dow, Attorney General, attorney for respondents (Melissa H. Raksa, Assistant Attorney General, of counsel; Beth Leigh Mitchell, Deputy Attorney General, on the brief).

Before Judges STERN, GRAVES and SABATINO.

**Opinion**

PER CURIAM.

 **\*1** Plaintiff, Correctional Medical Services, Inc. ("CMS"), appeals from a judgment of the Law Division dated January 30, 2009, dismissing plaintiff's verified complaint against the State of New Jersey and other State defendants, [1] without prejudice to plaintiff's right to pursue claims against the State, under the Contractual Liability Act, *N.J.S.A.* 59:13–1 to –10 ("the CLA"), arising out of the same subject matters. We affirm.

[1] As designated in plaintiff's complaint, the named defendants are the State of New Jersey, the Department of Corrections, the "State of New Jersey, Department of the Treasury, Division of Purchase and Property, Contract Compliance Audit Unit," and, in her official capacity only, Alice Small, Acting Director of the Division of Purchase and Property. For simplicity, we shall generally refer to the named defendants collectively as "the State," unless otherwise noted.

We need not recite at length the pertinent factual and procedural background. In 2004 CMS was awarded a contract with the State to provide health care services to inmates housed in various facilities by the Department of Corrections. The contract had an original term of two years, but was extended for a third year, ultimately running from April 1, 2005 through September 30, 2008. The contract allowed the State to audit CMS's performance, as the vendor of those services, in accordance with the contract's stated terms, as well as under generally accepted standards of care. If the audit results revealed deficiencies in the performance of services, then the contract authorized the State to calculate and deduct liquidated damages from future payments, subject to CMS's right to an administrative review process.

In October 2007, the New Jersey Office of the Inspector General ("OIG") released a report detailing the results of its investigation into apparent discrepancies and contractual non-compliance by CMS, particularly with respect to dental services.

Case 1:10-cv-03617-RBK-KMW   Document 76-1   Filed 01/08/13   Page 3 of 11 PageID: 732

Correctional Medical Services, Inc. V. State, Dept. of Treasury, Not Reported in A.2d...

The OIG report, in part, prompted the Division of Purchase and Property in the spring of 2008 to decline to exercise the State's option to continue the CMS contract for an additional year. The State ended its relationship with CMS and instead awarded the inmate health services contract to a different provider, the University of Medicine and Dentistry of New Jersey ("UMDNJ"), commencing on October 1, 2008.

In a letter dated July 31, 2008, the Acting Director of the Division of Purchase and Property ("the Division") advised CMS that the State intended to assess the company liquidated damages in the amount of $3,405,979.10,[2] as determined by the Division's Contract Compliance and Audit Unit. The Division then began withholding portions of those claimed liquidated damages from periodic installments otherwise owed to CMS under the contract.

[2]   The actual figure sought by the State in liquidated damages has been revised several times as this dispute has progressed. The precise amount is of no consequence to the present appeal.

CMS disputed the State's findings of irregularities and contractual breaches. It requested the State to cease withholding or deducting from payments due to it. The State declined to do so. Meanwhile, the OIG released a second report in December 2008 detailing additional findings of alleged failures of performance by CMS.

The present litigation began on November 10, 2008, when CMS filed a verified complaint and an order to show cause in the Law Division, styled as an action in lieu of prerogative writs. The complaint contained two counts: the first count challenged the merits of the State's final agency decision to withhold sums for liquidated damages, and the second count alleged due process violations and the unconstitutional taking of CMS's property contrary to 42 *U.S.C.A.* § 1983 ("Section 1983"). As part of its contentions, CMS alleged that the State had failed to follow certain procedural steps called for under its contract with CMS and pertinent regulations. CMS sought temporary restraints to prevent the State from withholding future payments.

**\*2** Shortly after filing its initial complaint in the Law Division, CMS filed a notice of claim with the State on November 20, 2008. The notice was filed pursuant to *N.J.S.A.* 59:13–5, a provision within the CLA which states that "[a]fter the expiration of 90 days from the date the notice of claim is received by the contracting agency, the claimant may file suit in a court of competent jurisdiction of the State of New Jersey." *Ibid.*

In response to CMS's complaint, the State filed a motion to dismiss, arguing that CMS's claims for money were only cognizable under the CLA, and were not appropriately brought as an action in lieu of prerogative writs or under Section 1983. The State also pointed out that CMS had filed its complaint prematurely, because it had not waited for ninety days after serving its notice of claim as required by *N.J.S.A.* 59:13–5.

After hearing oral argument, Assignment Judge Linda R. Feinberg granted the State's motion to dismiss, without prejudice to CMS's ability to file a proper action for relief under the CLA. CMS moved for reconsideration, which was denied.

Thereafter, on April 8, 2009, CMS filed a second complaint in the Law Division under a new docket number (L–0904–09), asserting a cause of action against the State for breach of contract under the CLA. On that same day, CMS filed a notice of appeal of the trial court's respective orders granting the State's motion to dismiss the first action and denying reconsideration of that dismissal.

We denied CMS's motion to stay the present appeal or to remand the matter to the Law Division for consolidation with the newly-filed action under the CLA. We understand that the second action is still pending in the Law Division and that it has not yet been tried.

On appeal, CMS argues that the trial court: (1) improperly relied upon the OIG investigation reports as hearsay documents; (2) erred in dismissing the first count of the verified complaint by not recognizing the State's failure to comply with compulsory regulations, and by erroneously concluding that CMS's substantive claims were superseded by the CLA; and (3) erred in

Case 1:10-cv-03617-RBK-KMW   Document 76-1   Filed 01/08/13   Page 4 of 11 PageID: 733

Correctional Medical Services, Inc. v. State, Dept. of Treasury, Not Reported in A.2d...

dismissing the Section 1983 claims in the second count because the CLA allegedly "does not afford adequate post-deprivation relief."

Having fully considered the points raised by CMS, and the State's opposition, we affirm the Law Division's order, substantially for the cogent reasons expressed in Judge Feinberg's oral bench ruling of January 30, 2009 granting the motion to dismiss, and as amplified by her written opinion dated March 20, 2009 denying reconsideration. Only a few brief observations are appropriate.

We fully concur with Judge Feinberg's assessment that the CLA provides an exclusive method for a State contract vendor to pursue monetary claims of the kind at issue in this dispute, including the withholding of liquidated damages the vendor allegedly owes to the State. *See N.J.S.A.* 59:13–3 (waiving the State's sovereign immunity from suit, but subject to the CLA's provisions); *see also D.J. Miller & Assocs., Inc. v. N.J. Dep't of Treasury,* 356 *N.J.Super.* 187, 193–94, 811 A.2d 952 (App.Div.2002).

 **\*3**  We also agree, without expressing any views about the ultimate disposition of the merits of the contractual dispute, that Judge Feinberg equitably and sensibly declined to enjoin the State from the further withholding of liquidated damages from additional payments that were otherwise due to CMS. As Judge Feinberg noted, if public monies are due to CMS, CMS "has a mechanism [under the CLA] to obtain them," and the court should hesitate to order the interim return of those funds to a vendor "where there's a legitimate, material, factual dispute in conjunction with a[n] independent report that raises issues about entitlement to the funds."

We further are satisfied that, although the State acknowledges that it departed here from certain procedural aspects of the contract and the regulations, the prejudice to CMS, if any, flowing out of those procedural departures can be explored more fully in the second lawsuit. We are not persuaded that the record bespeaks any conduct here by the State that rises to a constitutional deprivation of due process actionable under Section 1983. The funds were withheld based upon at least a colorable justification following the State audits, and the State will still have to demonstrate at trial its entitlement to liquidated damages under the terms of the CMS contract.

Lastly, we discern no manifest injustice, or any violation of the hearsay doctrine, arising out of the trial judge's consideration of the OIG reports, in rendering her decision to dismiss CMS's initial complaint without prejudice. The OIG reports were not accepted by the court conclusively for their truth, but rather simply treated as indicia that the State had some facially reasonable basis to withhold payments from CMS pending the adjudication of the claims for liquidated damages. *See N.J.R.E.* 801(c) (defining hearsay as an out-of-court statement "offered in evidence to prove the truth of the matter asserted"); *Carmona v. Resorts Int'l Hotel, Inc.,* 189 *N.J.* 354, 375–77, 915 A.2d 518 (2007) (finding no hearsay violation where a statement was considered not for the truthfulness for its contents, but to demonstrate that the recipient had a reasonable and good faith basis to engage in certain conduct after receiving that statement). Indeed, Judge Feinberg expressly stated in her oral ruling that she did not "draw any final conclusions" from the reports, but was simply recognizing their "presence" in looking at the State's process to withhold funds. The accuracy and validity of the OIG reports, as well as audits performed by the Division of Purchase and Property, will no doubt be explored at the trial of the CLA claims currently pending before the Law Division.

Affirmed.

---

**End of Document**                                                                 © 2013 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:10-cv-03617-RBK-KMW   Document 76-1   Filed 01/08/13   Page 5 of 11 PageID: 734
**State ex rel. Hayling v. Correctional Medical Services, Inc., 422 N.J.Super. 363 (2011)**
28 A.3d 1246

## 422 N.J.Super. 363
## Superior Court of New Jersey,
## Appellate Division.

STATE of New Jersey, through Leslie A. HAYLING, Jr., D.D.S., Plaintiff–Appellant,

v.

CORRECTIONAL MEDICAL SERVICES, INC., AllCare Dental Group, L.L.C., Vickie Bybee, David Meeker, Janice Bell, D.M.D., and Lionel Anicette, M.D., Defendants–Respondents.

Argued Sept. 13, 2011.    |    Decided Oct. 11, 2011.

**Synopsis**
**Background:** Private citizen, whose company had provided dental services to inmates of state's prisons, filed qui tam action against current provider of the services alleging violation of the New Jersey False Claims Act (NJFCA). Provider moved to dismiss, arguing that citizen's claims involved alleged conduct occurring prior to the effective date of the NJFCA, and thus not subject to that Act. The Superior Court, Law Division, Mercer County, dismissed complaint. Citizen appealed.

**[Holding:]** The Superior Court, Appellate Division, Payne, P.J.A.D., held that NJFCA was not retroactively applicable to conduct occurring prior to its effective date.

Affirmed in part and reversed in part.

**Attorneys and Law Firms**

**\*\*1248** Karen A. Confoy argued the cause for appellant (Sterns & Weinroth, attorneys; Ms. Confoy and Erica S. Helms, Trenton, on the briefs).

Diana L. Spagnuolo (Ballard Spahr L.L.P.) of the Pennsylvania bar, admitted pro hac vice, argued the cause for respondents (Genova, Burns & Giantomasi and Ms. Spagnuolo, attorneys; Kathleen Barnett Einhorn, Newark, John B. Kearney, Cherry Hill, and Ms. Spagnuolo, of counsel and on the brief).

Lisa D. Kutlin, Deputy Attorney General, argued the cause for amicus curiae State of New Jersey (Paula T. Dow, Attorney General, attorney; Andrea M. Silkowitz, Assistant Attorney General, of counsel; Ms. Kutlin, Megan Lewis, Deputy Attorney General, and Samuel S. Cornish, Deputy Attorney General, on the brief).

Ambrosio & Tomczak, Montclair, attorneys for respondents AllCare Dental Group, L.L.C. and Janice Bell, D.M.D., join in the brief filed on behalf of respondents Correctional Medical Services, Inc., Vickie Bybee and David Meeker.

Hill Wallack L.L.P., attorneys for respondent Lionel Anicette, M.D., join in the brief filed on behalf of respondents Correctional Medical Services, Inc., Vickie Bybee and David Meeker.

Before Judges PAYNE, REISNER and HAYDEN.

**Opinion**
The opinion of the court was delivered by

Case 1:10-cv-03617-RBK-KMW   Document 76-1   Filed 01/08/13   Page 6 of 11 PageID: 735

**State ex rel. Hayling v. Correctional Medical Services, Inc., 422 N.J.Super. 363 (2011)**
28 A.3d 1246

**\*\*1249** PAYNE, P.J.A.D.

**\*367** The New Jersey False Claims Act (NJFCA), *N.J.S.A.* 2A:32C–1 to –15 and *N.J.S.A.* 2A:32C–17 to –18, was enacted on January 13, 2008. Section 19 of that Act provided: "This act shall take effect on the 60th day after enactment." *See L.* 2007, *c.* 265, § 19. This appeal raises the issue whether, despite that language, the NJFCA should be given retroactive effect.

### I.

The issue arises in the following factual context. From 1996 through March 31, 2005, Correctional Dental Associates (CDA), a New Jersey corporation founded by Leslie A. Hayling, Jr., D.D.S., furnished dental services to inmates of New Jersey's prisons as a subcontractor pursuant to a contract between the State and defendant Correctional Medical Services, Inc. (CMS). In anticipation of the expiration of that contract, in 2004, the Department of Corrections, through the Division of Purchase and Property of the State Department of the Treasury, solicited bids for a new two-year combined health and dental services contract with two one-year optional extensions. CMS responded, submitting a bid with two options: either for CMS to directly provide all services or for it to subcontract with CDS for the provision of the dental service part of the contract. The contract was awarded solely to CMS, effective April 1, 2005. Thereafter, CMS was granted a one-year extension, and then an extension for a "transition period" to September 30, 2008.[1] The medical aspect of the contract was performed by CMS; the dental portion was performed by defendant **\*368** AllCare Dental Group, L.L.C., a subcontractor that was closely allied with CMS. Defendant Vickie Bybee was Senior Vice President and David Meeker was Regional Vice President of CMS; defendants Janice Bell, D.D.S. and Lionel Anicette, M.D. were co-owners and co-founders of AllCare.

[1]   Thereafter, medical and dental services were provided by the University of Medicine and Dentistry of New Jersey.

In 2005, Hayling commenced investigating CMS and AllCare. That investigation led him to conclude that AllCare was submitting false claims for payment under the dental service portion of the contract. In May 2008, Hayling informed the Office of the Attorney General of his intention to file a *qui tam*[2] action, pursuant to *N.J.S.A.* 2A:32C–5b, against CMS and AllCare alleging violations of the NJFCA. A pre-filing copy of the complaint was furnished to the Attorney General. Thereafter, in response to its request, Hayling provided the Office of the Attorney General with documents in support of that complaint. On August 25, 2008, Hayling filed the complaint under seal and served it upon the Attorney General as required by *N.J.S.A.* 2A:32C–5d.

[2]   *Qui tam* is short for *qui tam pro domino rege quam pro se ipso in hac parte sequitur,* meaning, who pursues this action on our Lord the King's behalf as well as his own. *Rockwell Int'l Corp. v. U.S.,* 549 *U.S.* 457, 463 n. 2, 127 *S.Ct.* 1397, 1403 n. 2, 167 *L.Ed.*2d 190, 200 n. 2 (2007). Pursuant to *N.J.S.A.* 2A:32C–7, the person bringing the action, known as the "relator" is provided a share in the proceeds of a successful action.

Separately, the State, after investigation, determined that the performance by CMS of its contract for provision of medical and dental services did not meet performance standards, and it assessed liquidated damages, which were deducted from amounts due under the contract. On November 10, 2008, CMS filed an action in lieu of prerogative writs against the State to contest that assessment. However, the suit was dismissed without prejudice to **\*\*1250** CMS's right to pursue claims against the State arising from the same facts under the Contractual Liability Act, *N.J.S.A.* 59:13–1 to 10. On April 8, 2010 we affirmed the dismissal in an unpublished opinion. **\*369** *Correctional Med. Servs, Inc. v. State, Dep't of Treasury,* No. A–3820–08, 2010 *WL* 1425064 (App. Div. April 8, 2010). On May 5, 2009, CMS instituted a second civil action against the State. That action remains pending.

On September 23, 2009, the State declined to exercise its right, pursuant to *N.J.S.A.* 2A:32C–5d and e, to intervene in the *qui tam* litigation, but it permitted the case to proceed.[3] The complaint, alleging violations of the NJFCA, unjust enrichment and fraud, was therefore unsealed and served upon defendants. Following service, defendants moved to dismiss the complaint, arguing

Case 1:10-cv-03617-RBK-KMW Document 76-1 Filed 01/08/13 Page 7 of 11 PageID: 736

**State ex rel. Hayling v. Correctional Medical Services, Inc., 422 N.J.Super. 363 (2011)**
28 A.3d 1246

that Hayling's claims involved alleged conduct occurring prior to the effective date of the NJFCA, and thus not subject to that Act. Additionally, defendants argued that Hayling lacked standing to bring claims of unjust enrichment and fraud on the State's behalf. The State filed a statement of interest in defendants' motions, and it was granted leave to appear as amicus.

3    *N.J.S.A.* 2A:32C–6b gives the Attorney General the right to dismiss an action for good cause shown, upon notice to the relator and an opportunity to be heard, notwithstanding the objections of the relator.

Following a hearing, the motion judge granted defendants' motions, ruling that because the events alleged in the underlying complaint as violating the NJFCA occurred from April 1, 2005 through March 31, 2007, but the NJFCA did not become effective until March 13, 2008, the Act was inapplicable. In doing so, the judge gave the Act a wholly prospective application, determining that none of the exceptions to the general rule that a statute is to be applied prospectively was applicable. Additionally, the judge dismissed Hayling's common-law causes of action for lack of standing. This appeal of the judge's dismissal of Hayling's NJFCA claims followed. Hayling has not appealed from the dismissal of his common-law claims.

## II.

 **[1]**    Having carefully reviewed the legal arguments presented by the parties and the State, we conclude that the motion judge was correct in his determination, as a matter of law, that the **\*370** NJFCA is not retroactively applicable to conduct occurring prior to its effective date. *See Manalapan Realty v. Manalapan Twp. Comm.,* 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995). In reaching this conclusion, we commence with the Supreme Court's observation that:

  The courts of this State have long followed a general rule of statutory construction that favors prospective application of statutes. The rationale for this rule has been succinctly stated as follows:

   It is a fundamental principle of jurisprudence that retroactive application of new laws involves a high risk of being unfair. There is general consensus among all people that notice or warning of the rules that are to be applied to determine their affairs should be given in advance of the actions whose effects are to be judged by them. The hackneyed maxim that everyone is held to know the law, itself a principle of dubious wisdom, nevertheless presupposes that the law is at least susceptible of being known. But this is not possible as to law which has not been made. [2 Sutherland, *Statutory Construction,* § 41.02 **\*\*1251** at 247 (4th ed. 1973) (quoted in *Weinstein v. Investors Savings* [*& Loan Ass'n,*] 154 *N.J.Super.* 164,] 167 [381 *A.*2d 53 (App.Div.1977) ]).

  [*Gibbons v. Gibbons,* 86 *N.J.* 515, 521–22, 432 *A.*2d 80 (1981) (citations and footnote omitted).]

*See also, e.g., Cruz v. Central Jersey Landscaping, Inc.,* 195 *N.J.* 33, 45, 947 *A.*2d 1228 (2008).

Although the Court has held that the rule of interpretation just set forth is not to be applied mechanically, and it has recognized exceptions to the rule, the Court has stated that those exceptions are applicable in instances in which "there is no clear expression of intent by the Legislature that the statute is to be prospectively applied only." *Gibbons, supra,* 86 *N.J.* at 522, 432 *A.*2d 80. In the present case, the fact that the Legislature postponed the Act's effective date provides clear evidence that it envisioned only prospective application. *See Twiss v. State,* 124 *N.J.* 461, 468, 591 *A.*2d 913 (1991) (noting that a postponed effective date is an indicium that the Legislature intended a statute to have prospective application) (citing Sutherland, *Statutory Construction,* § 41.04 at 350 (4th ed. 1986)); *see also Sarasota–Coolidge Equities II, L.L.C. v. S. Rotondi & Sons, Inc.,* 339 *N.J.Super.* 105, 116, 770 *A.*2d 1264 (App.Div.2001) (applying this principle and citing multiple decisions construing the Uniform Commercial Code and other statutes holding likewise); *Town of Secaucus v. Hackensack* **\*371** *Meadowlands Dev. Comm'n,* 267 *N.J.Super.* 361, 377, 631 *A.*2d 959 (App.Div.1993) ("Postponement of a statute's effective date indicates that it is to have only prospective application"), *certif. denied,* 139 *N.J.* 187, 652 *A.*2d 175 (1994); *see generally* Norman J. Singer and J.D. Shambie Singer, *Statutes and Statutory Construction* § 41.4 at 400–18, 437 (7th ed. 2009).

Case 1:10-cv-03617-RBK-KMW   Document 76-1   Filed 01/08/13   Page 8 of 11 PageID: 737

**State ex rel. Hayling v. Correctional Medical Services, Inc., 422 N.J.Super. 363 (2011)**
28 A.3d 1246

As the State noted in its brief on appeal, the Legislature declined to follow the model of some other states, which specified that their false claims acts would have retroactive application. *See* New York False Claims Act, *L.* 2007, *c.* 58, § 93 ("section thirty-nine of this act [Civil actions for false claims] shall apply to claims filed or presented prior to, on or after April 1, 2007 [the Act's effective date]."); *Cal. Gov.Code* § 12654(b) ("A civil action under Section 12652 may be brought for activity prior to January 1, 1988, if the limitations period set in subdivision (a) has not lapsed.").

 [2]    [3]    [4]    [5]   As our Supreme Court has held:

" 'In the interpretation of a statute our overriding goal has consistently been to determine the Legislature's intent.' " *Young v. Schering Corp.,* 141 *N.J.* 16, 25 [660 *A.*2d 1153] (1995) (quoting *Roig v. Kelsey,* 135 *N.J.* 500, 515 [641 *A.*2d 248] (1994)). As a general rule, that process begins with an examination of the plain language of the statute. Where a statute is clear and unambiguous on its face and admits of only one interpretation, a court must infer the Legislature's intent from the statute's plain meaning. A court may neither rewrite a plainly-written enactment of the Legislature nor presume that the Legislature intended something other than it expressed by way of the plain language. "[W]e need delve no deeper than the act's literal terms to divine the Legislature's intent." [*State v.*] *Butler,* 89 *N.J.* [220,] 226 [445 *A.*2d 399 (1982) ].

[*O'Connell v. State,* 171 *N.J.* 484, 488, 795 *A.*2d 857 (2002) (citations omitted).]

The New Jersey False Claims Act provides clear evidence of the Legislature's intent that the Act be applied prospectively. We thus need no further analysis to buttress our conclusion that the motion judge properly decided this issue.

**\*\*1252 III.**

Hayling, nonetheless, urges us to look further, which we do for purposes of completeness.

 **\*372**  [6]   In *Gibbons,* the Court recognized as an exception to the presumption of prospective application those "statutes in which the Legislature has expressed the contrary intent; *i.e.,* that the statute be applied retroactively." *Gibbons, supra,* 86 *N.J.* at 522, 432 *A.*2d 80. Hayling argues that such a legislative intent can be garnered in this case from the description of the Act given by its co-sponsor, Assemblyman Herb Conaway, Jr., to the Assembly's Judiciary Committee during its final hearings on the Act held on January 3, 2008.[4] At that time, Assemblyman Conaway described the Act "as New Jersey's whistle blower statute which tracks the federal law that allows private individuals with the knowledge of *past or present fraud* to the federal, and in this case, state government to sue on behalf of the government to recover the losses to the public for fraudulently obtained public monies."[5] (Emphasis supplied.) Hayling contends that this statement provides "an unqualified indication of legislative intent" that the NJFCA should be applied retroactively.

---

[4]  In making this argument, Hayling points to no ambiguity in the statement of the effective date of the NJFCA, and he ignores the principle that "[a] court should not 'resort to extrinsic interpretive aids' when 'the statutory language is clear and unambiguous, and susceptible to only one interpretation....' " *DiProspero v. Penn,* 183 *N.J.* 477, 492, 874 *A.*2d 1039 (2005) (quoting *Lozano v. Frank DeLuca Constr.,* 178 *N.J.* 513, 522, 842 *A.*2d 156 (2004) (internal quotations omitted)).

[5]  The record of Assemblyman Conaway's statements is available in audio only at http://www.njleg.state.nj.us/media/archive_audio2.asp? KEY=AJU&SESSION=2006.

We disagree. The word that Hayling has singled out does not appear in a discussion of retroactivity—and, indeed, retroactivity is never discussed directly by the Assemblyman. Rather, the word upon which Hayling's argument hinges appears in a general description of the statute itself. Thus, it is far more reasonable to construe the phrase in which the word "past" is found as an expression of the Legislature's intent to permit statutory causes of action occurring after the effective date of the statute that are premised upon either completed acts of fraud or ongoing conduct.

Case 1:10-cv-03617-RBK-KMW   Document 76-1   Filed 01/08/13   Page 9 of 11 PageID: 738

State ex rel. Hayling v. Correctional Medical Services, Inc., 422 N.J.Super. 363 (2011)
28 A.3d 1246

**\*373** Further, we note that the Assemblyman's statement did not constitute an official "Sponsor's Statement" as envisioned by the Court in *Deaney v. Linen Thread Co.,* 19 *N.J.* 578, 584–85, 118 *A.*2d 28 (1955), and there deemed one of the extrinsic aids that may be consulted in construing a statute's meaning, but rather, was testimonial in nature and never incorporated in the context that Hayling suggests into any formal document. We thus decline to give any interpretive weight to the Assemblyman's testimony as construed by Hayling. *Cruz, supra,* 195 *N.J.* at 47–48, 947 *A.*2d 1228. Furthermore, we find it particularly noteworthy that the Assembly Judiciary Committee Statement to Senate Committee Substitute for Senate Bills 360[6] and 1892 with committee amendments, dated January 3, 2008—the date of Assemblyman Conaway's testimony—specifically provides: "*Effective Date.* The substitute takes effect on the 60th day after enactment." The same effective date language appears in Assembly Judiciary Committee Statement to Assembly Committee Substitute for Assembly Bills 3428 **\*\*1253** and 2186, also dated January 3, 2008. It is thus clear that if Assemblyman Conaway intended his statement as an implied acknowledgment of retroactivity, the Judiciary Committee rejected his position. *See Cruz, supra,* 195 *N.J.* at 47–48, 947 *A.*2d 1228 (determining witness statements, unaccompanied by legislative action, to provide an insufficient basis for construing a statute to apply retroactively).

[6]   Senate No. 360 is the bill at issue here; the other bill concerned Medicaid fraud.

 **[7]**  **[8]**  Nor do we find that a retroactive interpretation of the NJFCA must be implied as "necessary to make the statute workable or to give it the most sensible interpretation." *Gibbons, supra,* 86 *N.J.* at 522, 432 *A.*2d 80. The Act establishes a *qui tam* action as a means of policing fraud on state government, thereby recognizing a cause of action that had previously been unavailable under the laws of New Jersey. Construing the Act as prospectively applicable in no way destroys its functionality, as was the **\*374** case in *Rothman v. Rothman,* 65 *N.J.* 219, 223–24, 320 *A.*2d 496 (1974) (applying the State's newly enacted equitable distribution statute retroactively so as to avoid the "difficult if not impossible task," *id.* at 223, 320 *A.*2d 496, of determining the date of acquisition of each marital asset and to avoid the probability that the full effect of the newly-enacted statute "would not be felt for at least a generation." *Id.* at 224, 320 *A.*2d 496.).

 **[9]**  **[10]**  Further, retroactivity is not otherwise required for the reasonable application of the Act. While it is possible that, if the statute were applied retroactively, the State could recover additional funds paid by it as the result of false claims, we find no evidence that the Legislature envisioned such additional potential recoveries when enacting the NJFCA. The fact that reach of an ameliorative statute could be broader does not constitute a sufficient reason, without support in the legislative history, for declaring a statute to be retroactive. *See Cruz, supra,* 195 *N.J.* at 42, 947 *A.*2d 1228 (declaring system for compensation of injured workers to be remedial and entitled to a liberal construction) and at 48 (nonetheless, determining not to retroactively apply amendments to the Workers' Compensation Act increasing the level of death benefits).

 **[11]**  The *Gibbons* Court also recognized, as an exception to the presumption of prospective application of statutes, instances in which amendatory statutes were ameliorative or curative in nature. However, the NJFCA is not "ameliorative"—a concept that has been utilized only in a criminal context. *See Kendall v. Snedeker,* 219 *N.J.Super.* 283, 286, 530 *A.*2d 334 (App.Div.1987) (limiting applicability of concept to criminal cases); *In re Smigelski,* 30 *N.J.* 513, 527, 154 *A.*2d 1 (1959) (holding a statutory amendment restricting a juvenile's possible exposure to commitment was ameliorative and, for that reason, could be applied retroactively).

Further, the NJFCA is not "curative" as we have defined that term. We have held that the "curative" exception "generally includes 'curative acts [which] are made necessary by inadvertence **\*375** or error in the original enactment of a statute or in its administration.' " *Kendall, supra,* 219 *N.J.Super.* at 287, 530 *A.*2d 334 (quoting 2 Sutherland, *Statutory Construction,* § 41.11 at 410 (4th ed. 1973)). The NJFCA "cures" nothing through amendment, but instead independently establishes a *qui tam* cause of action to benefit the State. *Compare 2nd Roc–Jersey Assocs. v. Morristown,* 158 *N.J.* 581, 605, 731 *A.*2d 1 (1999) (finding the Legislature's amendment to the statutory definition of Special Improvement Districts (SIDs) to permit municipalities to exempt residential properties from such districts for the purpose of imposing assessments to be curative, **\*\*1254** when it remedied what the Legislature perceived to be our misapplication of the law); *Twiss, supra,* 124 *N.J.* at 469, 591 *A.*2d 913 (declaring the Uniform Unclaimed Property Act to be curative and thus retroactive because it improved the existing statutory scheme by

Case 1:10-cv-03617-RBK-KMW  Document 76-1  Filed 01/08/13  Page 10 of 11 PageID: 739
State ex rel. Hayling v. Correctional Medical Services, Inc., 422 N.J.Super. 363 (2011)
28 A.3d 1246

unifying the law of unclaimed property and conformed New Jersey law to that of other jurisdictions); *Gibbons, supra,* 86 *N.J.* at 524, 432 *A.*2d 80 (holding that an amendment to the equitable distribution statute excluding from distribution all property acquired during the marriage by way of gift, devise or bequest except interspousal gifts would be given retroactive effect, in part, because it "is curative insofar as it reflects the Legislature's attempt to improve a statutory scheme already in existence.").

 [12]    The final factor recognized in *Gibbons* applies when "the expectations of the parties may warrant retroactive application of a statute." *Gibbons, supra,* 86 *N.J.* at 523, 432 *A.*2d 80. The Court found such a circumstance to exist in *2nd Roc–Jersey, supra.* There, municipalities had established SIDs as a means of encouraging economic growth and employment, but many had excepted residential properties from assessments levied to accomplish the statutory purposes. In an unreported decision in *Gonzalez v. Borough of Freehold,* No. A–3476–92 (App. Div. June 30, 1994), *certif. denied,* 147 *N.J.* 576, 688 *A.*2d 1052 (1997), we upheld the constitutionality of the statute authorizing the establishment of SIDs, but invalidated the provision of a municipal SID ordinance **\*376** that exempted residential properties because the provision violated the statutory definition of a SID as "an area within a municipality designated by municipal ordinance as an area in which a special assessment on *all* property within the district shall be imposed." *N.J.S.A.* 40:56–66(b) (emphasis supplied). [7] Thereafter, the Legislature amended *N.J.S.A.* 40:56–66(b) to expressly permit municipalities to exempt residential properties, residential portions of mixed-use properties, and parcels with any number of residential units or vacant properties within a SID from special assessment. *See L.* 1995, *c.* 170. As we previously noted, the Court deemed the amendment retroactive as curative. *2nd Roc–Jersey, supra,* 158 *N.J.* at 605, 731 *A.*2d 1. As additional support for its holding, the Court noted "the expectations of many of the New Jersey municipalities that have enacted SIDs ... allow the amendment to be applied retroactively." *Ibid.* In contrast to the circumstances described in *2nd Roc–Jersey,* retroactive application is not required to meet expectations here, as to which there could have been none.

[7]    We take our description of this decision from the Court's opinion in *2nd Roc–Jersey, supra,* 158 *N.J.* at 587, 731 *A.*2d 1.

In summary, even if we embark upon the expanded analysis that Hayling urges, we find no basis for a conclusion that the NJFCA should be applied retroactively. We decline to consider whether such retroactive application would be constitutional, determining such an analysis is unnecessary, given our affirmance of the motion judge's conclusion that the NJFCA should only be given prospective effect. *Randolph Town Ctr., L.P. v. Cnty. of Morris,* 186 *N.J.* 78, 80, 891 *A.*2d 1202 (2006).

## IV.

Hayling makes an additional argument that the motion judge erred in dismissing his action *in toto,* pointing to allegations of his complaint that concern conduct occurring after the effective date of the NJFCA. To the extent that Hayling's claims in this **\*\*1255** regard **\*377** can be factually supported, he may seek to amend his existing complaint to specifically assert such claims or file a new action in which such claims are raised. [8] We therefore reverse the order on appeal only to the limited extent that it may be construed as dismissing such post-Act claims with prejudice.

[8]    We note that a timely filed new action would not be barred by the applicable statute of limitations. *N.J.S.A.* 2A:32C–11 (establishing a six-year limit "after the date on which the violation of the act is committed").

We decline to address Hayling's argument that this matter should be consolidated with the pending action by CMS against the State, regarding the trial judge to be in a better position to determine, after reviewing the procedural posture of the two actions, whether consolidation would be appropriate.

Affirmed in part and reversed in part.

**Parallel Citations**

28 A.3d 1246

**State ex rel. Hayling v. Correctional Medical Services, Inc., 422 N.J.Super. 363 (2011)**
28 A.3d 1246

**End of Document**

© 2013 Thomson Reuters. No claim to original U.S. Government Works.