<u>NOT FOR PUBLICATION</u>                    (Document Nos. 75, 86)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| _____ : | |
| ELVIS SOTO-MUNIZ,                                  : | |
|                                                              : | Civil No. 10-3617 (RBK) |
|                                      Plaintiff,       : | |
|                                                              : | |
|                          v.                             : | **OPINION** |
|                                                              : | |
|                                                              : | |
| CORIZON, INC. f/k/a CORRECTIONAL   : | |
| MEDICAL SERVICES, INC., et al.            : | |
|                                                              : | |
|                                                              : | |
|                                      Defendants.   : | |
| _____ : | |

**KUGLER**, United States District Judge:

      This matter arises out of Elvis Soto-Muniz's ("Plaintiff") incarceration at South Woods State Prison ("SWSP"). During a two-week period, Plaintiff claims to have been deprived of adequate medical treatment in violation of his constitutional rights. Defendants in this action are Corizon, Inc. f/k/a Correctional Medical Services, Inc. ("CMS"), David Meeker ("Meeker"), Dr. Allan Martin ("Martin"), Dr. Lionel Anicette ("Anicette"), Dr. Yasser Soliman ("Soliman"), and "John Does" #1-5. The matter is currently before the Court on the joint motion of CMS, Meeker, Martin, and Soliman, and a companion motion of Anicette to dismiss the Plaintiff's Amended Complaint for failure to state a claim upon which relief can be granted pursuant to FRCP 12(b)(6) (Docket Nos. 75, 86).

For the reasons hereinafter recited, all of the Defendants' motions are **DENIED**.

## I.   BACKGROUND

On a motion to dismiss under FRCP 12(b)(6), the Court must "accept all factual allegations as true and construe the complaint in the light most favorable to the Plaintiff." See Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).  As such, the following facts are taken from Plaintiff's Amended Complaint.

Plaintiff suffers from ulcerative colitis, an inflammatory bowel disease.  (Am. Compl. ¶ 19, Doc. No. 62).   Complications of ulcerative colitis can include, among other things, "severe bleeding, perforated colon, and severe dehydration."  (Id. ¶ 22).  Prior to July and August of 2008, Plaintiff managed his ulcerative colitis successfully with medication and the occasional "professional medical intervention in a clinical or hospital setting."  (Id. ¶ 23).  In May of 2008, Plaintiff presented at Bergen Regional Medical Center ("BRMC") with complications resulting from his ulcerative colitis and was admitted for treatment.  (Id. ¶ 27).  Plaintiff was treated with intravenous ("IV") steroids and antibiotics, and received daily hemoglobin and hematocrit therapy.  (Id.)  Plaintiff responded well to this treatment and was subsequently discharged.  (Id.)

On or about May 16, 2008, Plaintiff was sentenced in connection with a criminal matter and held at the Bergen County Jail.  (Id. ¶ 28).  On or about July 10, 2008, Plaintiff was transferred to the custody of the New Jersey State Department of Corrections ("NJDOC") and sent to NJDOC's Central Reception and Assignment Facility ("CRAF").  (Id. ¶ 29).  While at CRAF, Plaintiff was processed by medical personnel. (Id.)  Giselle Williams, LPN, noted in Plaintiff's electronic medical record ("EMR") Plaintiff's history of ulcerative colitis and his hospitalization two months prior to his

arrival at CRAF.  (Id.)  Sharon Levin, RN, NP, also charted Plaintiff's health issues and related symptoms in his EMR.  (Id.)

On or about July 15, 2008, Plaintiff was seen at a sick call by Phyllis Hewins, RN, who noted in Plaintiff's EMR that he presented with nausea and cramping, and reported that his ulcerative colitis medications were not working.  (Id. ¶ 30).  Dr. Grace Melendez further noted Plaintiff's seven-year history of ulcerative colitis with multiple hospitalizations.  Dr. Melendez recites that Plaintiff appeared "chronically ill", was suffering from "acute exacerbation of Crohn['s], needed "IV hydration" and a "gi consult" (gastrointestinal).  (Id. ¶ 31).  On or about July 17, 2008, Plaintiff was transferred to SWSP.  (Id. ¶ 32).

Upon arrival at SWSP, Plaintiff was evaluated by medical personnel and placed in the infirmary; Plaintiff's weight was recorded in his EMR as 139 pounds.  (Id. ¶ 33). Plaintiff's current symptoms and his medical history were recorded.  (Id.)  Nurse Gail Willet noted, "CMS medical staff attempted to start IV fluids but abandoned the effort after several failed attempts."  (Id. ¶ 34).

During Plaintiff's stay in the infirmary, several medical personnel, including Defendant Martin, saw him.  Plaintiff's EMR notes that he had increased symptoms of ulcerative colitis and was suffering from ongoing gastrointestinal problems.  (Id. ¶ 37).  It is noted that attempts to start IV hydration on Plaintiff continued to be unsuccessful and that Plaintiff was consistently complaining of difficulty eating, abdominal pain, and diarrhea, and that Plaintiff appeared weak.  (Id. ¶¶ 37-40).

On July 21, 2008, Plaintiff was seen by two nurses and by Defendant Martin during infirmary rounds.  (Id. ¶ 41).  Defendant Martin noted in Plaintiff's EMR that

Plaintiff complained of "diarrhea, fatigue, malaise, melena, bloody stools, and abdominal pain." (Id.)  Defendant Martin prescribed a nutritional supplement and discharged Plaintiff to the prison's general population. (Id. ¶¶ 41-42).

On or about July 25, 2008, Plaintiff was seen at a sick call by medical personnel for rectal bleeding, weakness, and poor appetite. (Id. ¶ 45).  On or about August 1, 2008, Plaintiff was transferred to the infirmary from the general population for "medical management" by medical personnel. (Id. ¶ 48).  Later that day, Defendant Martin transferred Plaintiff back to the general population notwithstanding Plaintiff's continued complaints of "bloody diarrhea several times a day" and weight loss. (Id. ¶ 49).  Plaintiff's laboratory blood work revealed that compared to previous blood work, his "white blood cell count was elevated, his hemoglobin had dropped from 12.9 to 8.5, and his hematocrit had dropped from 43 to 28"; all of these results that were indicative of "inflammation, significant blood loss and significant chronic bleeding." (Id. ¶ 50).  Defendant Martin signed off on this lab report after he transferred Plaintiff back to general population. (Id.)

Plaintiff's health continued to deteriorate even as he continued to seek medical attention from NJDOC and CMS staff. (Id. ¶ 52).  On or about August 5, 2008, Plaintiff was "seen at a sick call for weight loss, dehydration and kidney pain." (Id. ¶ 53).  Plaintiff's weight was noted in his EMR as being 130 pounds. (Id.)  As a result of that visit, Plaintiff received a wheel chair and NJDOC was notified that Plaintiff required a lower bunk due to weakness and malaise. (Id.).

Although Plaintiff repeatedly informed Defendant Martin that he needed additional medical care, and the treatment he was receiving was not working, Plaintiff

was told that he would not be sent to a hospital.  (Id. ¶¶ 54-55).  Plaintiff claims that Defendant Martin became verbally abusive to Plaintiff in response to Plaintiff's requests for adequate medical treatment.  (Id.).  Plaintiff's condition became so severe that on or about August 6, 2008, Plaintiff was transported to the emergency room at Saint Francis Medical Center for evaluation and treatment.  (Id. ¶ 57).

Plaintiff's condition had become so severe that Plaintiff required a blood transfusion and was informed that "due to extreme hydration and the lack of treatment for his chronic rectal bleeding," Plaintiff required surgery to remove his entire colon and rectum.  (Id. ¶ 60).  Plaintiff spent approximately one week at Saint Francis for the treatment of "severe dehydration, anemia, and ulcerative colitis" prior to his first surgery on August 15, 2008.  (Id. ¶ 61).  On August 15, 2008, Plaintiff underwent a total abdominal colectomy and end ileostomy and received an ostomy pouch to collect intestinal waste.  (Id. ¶ 62).  Plaintiff was returned to SWSP to await his second surgery. On or about November 21, 2008, Plaintiff underwent his second surgery for the removal of his rectum and for the treatment of complications stemming from his first surgery.  (Id. ¶ 63).

Plaintiff's health continued to deteriorate during his incarceration at SWSP, including, bouts of kidney failure, sepsis, pulmonary embolism, and pulmonary atelectasis (collapse). (Id. ¶ 64).

Throughout Plaintiff's incarceration at SWSP, his healthcare was provided by CMS, who had contracted with the State of New Jersey and NJDOC to provide healthcare services at, among other facilities, SWSP.  (Id. ¶ 8).

## II.      PROCEDURAL HISTORY

On April 30, 2010, Plaintiff filed a complaint in the United States District Court for the Eastern District of New York against NJDOC, The Health Services Unit (the "HSU"), SWSP, Defendant Martin, and John Doe #1-5 (the "original Complaint").  (See generally Compl., Doc. No. 1).  The case was subsequently transferred to the District of New Jersey.  (Doc. No. 10).  On October 15, 2010, Plaintiff voluntarily dismissed his claims against NJDOC, the HSU, and SWSP.  (Doc. No. 24).  On November 15, 2010, Defendant Martin answered the original Complaint and discovery commenced.  (Doc. Nos. 25, 29).

On July 13, 2012, Plaintiff filed a motion for leave to amend his Complaint in order to add CMS, Meeker, Anicette, and Soliman as Defendants.  (Doc. No. 61).  The Court granted Plaintiff's motion and Plaintiff filed his Amended Complaint against all Defendants on October 5, 2012.

On December 28, 2012, Defendants CMS, Meeker, Martin, and Soliman filed a joint motion to dismiss Plaintiff's Amended Complaint  (the "CMS Brief"). (Doc. No. 75).  On March 5, 2013, Defendant Anicette filed a motion to dismiss Plaintiff's Amended Complaint identical in substance to the motion filed by his co-defendants (the "Anicette Brief").  (Doc. No. 86).  Defendants advance four arguments in support of their motion:  (1) Plaintiff's claims are barred by the applicable statute of limitations; (2) Plaintiff has failed to state a claim against the new defendants based upon deliberate indifference under 42 U.S.C. § 1983; (3) Plaintiff's claimed disagreements as to the course of medical treatment he received while at SWSP do not constitute a claim for deliberate indifference under 42 USC § 1983; and (4) Plaintiff's allegations of *respondeat*

*superior* liability fail to constitute claims under 42 USC § 1983.[1]   As both motions have been fully briefed, this matter is now ripe for disposition.

## III.   STANDARD OF REVIEW UNDER 12(B)(6) - MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)).  In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

To make this determination, a court conducts a three-part analysis.  Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).  "First, the court must take note of the elements a plaintiff must plead to state a claim."  Id. (quoting Iqbal, 556 U.S. at 675 (internal quotation marks omitted)).  "Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 131 (quoting Iqbal, 556 U.S. at 680 (internal quotation marks omitted)).  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."  Id.

---

[1] Although Plaintiff alleges violations of his First Amendment rights in his Amended Complaint, Defendants do not contest these claims and thus there is no need for the Court to address that issue further.

(quoting Iqbal, 556 U.S. at 680).  This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.  A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. Id.  Thus, "[t]he issue before the Court is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims." Walker v. Glover, No. 06-5211 SRC, 2008 WL 4606312, at *3 (D.N.J. Oct. 16, 2008) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1420 (3d Cir. 1997)).

In the course of its analysis, "a court may take judicial notice of a prior judicial opinion." McTernan v. City of York, 577 F.3d 521, 526 (3d Cir. 2009).

## IV.    DISCUSSION

### A.    Statute of Limitations

Defendants CMS, Soliman, Meeker, and Anicette argue that:  (1) Plaintiff's claims are time-barred because his claims against these Defendants were filed well past the expiration of the statute of limitations; (2) Plaintiff knew or could have determined after a reasonable investigation whether he had any claims against these Defendants; and (3) Plaintiff's claims do not relate back to his original complaint under Rule 15(c)(1) and N.J.S.A. 4:26-4, such that the statute of limitations was tolled.  (CMS Br. 10-16; Anicette Br. 10-16).

Plaintiff counters that the Defendants have not carried their burden of proving that his claims are time-barred because:  (1) they failed to identify any date when the Plaintiff's claims accrued and thus the Court is unable to speculate when the statute of limitations expired, and (2) the claims as to the newly-added Defendants relate back to

the original Complaint and/or are timely under the fictitious party rule.[2]  For the following reasons, the Court finds that Plaintiff's argument is more persuasive.

In a civil rights claim under 42 U.S.C. § 1983, the Court will apply the statute of limitations governing actions for personal injury in the state in which the action arises. Dique v. New Jersey State Police, 603 F.3d 181, 185 (3d Cir. 2010).  Where, as here, the events underlying a section 1983 suit occurred in New Jersey, the applicable statute of limitations is New Jersey's two-year limitations period for personal-injury torts.  See N.J. Stat. Ann. 2A:14-2 (West 2004).  Accordingly, in order to survive a motion to dismiss on statute of limitations grounds, Plaintiff's claims must have been filed within two years of the accrual of the cause of action.  See Cito v. Bridgewater Twp. Police Dep't, 892 F.2d 23, 25 (3d Cir. 1989).

A "tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages."  Dique, 603 F.3d at 185-86 (quoting Wallace v. Kato, 549 U.S. 384, 391 (2007)).  Stated differently, a cause of action accrues when "the first significant event necessary to make the claim suable occurs."  Lake v. Arnold, 232 F.3d 360, 366 (3d Cir. 2000).  Although a plaintiff need not plead that his or her claim has been timely filed, "if the allegations of a complaint show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim."  Cope v. Kohler, No. 12-5188, 2013 WL 812130, at *3 (D.N.J. Mar. 4, 2013) (internal quotation marks omitted).

---

[2] Although Plaintiff also argues that Defendant Martin cannot avail himself of a statute of limitations defense (Pl.'s Br. 22, Doc. No. 76), a review of the CMS and Anicette Briefs reveal that only CMS, Soliman, Meeker, and Anicette argue that the statute of limitations precludes Plaintiff's claims.  Defendant Martin did not join in this argument. (CMS Br. 10-16; Anicette Br. 10-16.)

1. <u>The Timeliness of Plaintiff's Original Complaint</u>

CMS, Anicette, Meeker, and Soliman have not argued that Plaintiff's original Complaint was untimely and a review of the allegations in Plaintiff's Complaint show that Plaintiff filed his original Complaint within the limitations period.

On April 30, 2010, Plaintiff filed his original Complaint alleging that his civil rights had been violated. (<u>See generally</u> Compl., Doc. No. 1). In this Complaint, Plaintiff alleged, among other things, that the NJDOC, HSU, SWSP, Martin, and John Doe #1-5 deliberately and intentionally failed to provide the necessary medical treatment for Plaintiff's ulcerative colitis and that Defendants' "policies and practices created an unreasonable risk to Plaintiff's health and civil liberties." (<u>Id.</u> ¶¶ 25-26, 28-29, 31-33). Plaintiff alleges that these constitutional violations occurred during his incarceration at SWSP. (<u>See generally</u> <u>id.</u>).

Plaintiff alleges that he was first transferred to SWSP in or around June 2008. (<u>Id.</u> ¶ 15). Thus, even if the first significant event necessary to make Plaintiff's claims viable occurred on June 1, 2008, Plaintiff filed his suit within the two-year limitations period on April 30, 2010.

Accordingly, Plaintiff's original Complaint was timely filed.

2. <u>Relation Back under Rule 15(c) and New Jersey Court Rule 4:26-4</u>

Because Plaintiff's original Complaint was filed within the limitations period, the Court must next inquire whether Plaintiff's Amended Complaint against CMS, Anicette, Soliman, and Meeker relates back to his original Complaint such that claims filed against those defendants are timely.

Rule 15(c)(1) provides that an amendment of a pleading "relates back to the date of the original pleading when relation back is permitted by the law that provides the statute of limitations applicable to the action." Fed. R. Civ. P. 15(c). Where, as here, a plaintiff does not know the identity of a defendant, he may avail himself of New Jersey Court Rule 4:26-4, which allows a plaintiff to file suit against a defendant "under a fictitious name, stating it to be fictitious and adding an appropriate description sufficient for identification." N.J.R. 4:26-4. The fictitious party rule may be used only if: (1) "the plaintiff exercised due diligence to ascertain the defendant's true name before and after filing the complaint"; (2) "the fictitious name designation . . . [has] appended to it an appropriate description sufficient to identify the defendant"; and (3) the application of the rule does not prejudice the defendant. Derienzo v. Harvard Indus., Inc., 357 F.3d 348, 353 (3d Cir. 2004) (internal quotation marks omitted). Plaintiff must invoke this rule prior to the expiration of the limitations period. Id.

On the record before the Court, it is apparent that Plaintiff has complied with New Jersey's fictitious party rule such that relation back under 15(c) is permissible.

Plaintiff appended the following description to his fictitious name designation: "employees, entities, individuals or organizations which were responsible for Plaintiff's medical treatment while incarcerated." (Compl. ¶ 11). In Plaintiff's Amended Complaint he describes CMS, Anicette, Meeker, and Soliman as follows:

1. CMS is an entity that contracted with NJDOC to provide medical services to Plaintiff and his fellow inmates at SWSP. (Am. Compl. ¶ 8).

2. Defendant Meeker was employee of CMS and the Vice President of Operations for the State of New Jersey. (Id. ¶ 10).

3. Defendant Anicette was an employee of CMS and the State Medical Director for the State of New Jersey, which included SWSP. (Id. ¶ 12).

4. Defendant Soliman was an employee of CMS and served as Associate State Medical Director for the State of New Jersey, which included SWSP. (Id. ¶ 13).

Plaintiff used a description that was appropriate and sufficient to identify Defendants. Plaintiff indicated in his original Complaint that Defendants John Doe #1-5 were responsible for his medical treatment while incarcerated and each of the Defendants named in the Amended Complaint, appears to fall within the description set forth in the original Complaint. Thus, Plaintiff's fictitious party designation was sufficient to identify CMS, Anicette, Meeker, and Soliman.

Defendants have not advanced any facts indicating that Plaintiff knew or had reason to know of their identities, such that Plaintiff failed to exercise due diligence in ascertaining Defendants' true names before and after filing the original Complaint. Indeed, it was not until Plaintiff took depositions on April 27, 2012, and May 18, 2012, that Plaintiff learned of these Defendants' identities, and thereafter promptly filed a motion with the Court seeking leave to amend his original Complaint. (Doc. No. 61). See Farrell v. Votator Div. of Chemetron Corp., 299 A.2d 394 (N.J. 1973) (allowing substitution even though statute of limitations had expired, because plaintiffs in good faith brought their action expeditiously against the defendant manufacturer under a fictitious name, identified it by amendment as soon as they discovered its true name, and served the amended complaint diligently thereafter"); cf. Cardona v. Data Sys. Computer Ctr., 618 A.2d 864, 864-64 (N.J. 1992) (holding that plaintiff's claims against newly added defendants, which resulted from a car accident, were barred by statute of limitations and plaintiff was unable to avail himself of the fictitious party rule where at the time of the accident the police had completed a report that listed the names and

12

addresses of all parties involved, and the plaintiff could have easily obtained a copy of the report and discovered the identity of the newly added defendants in advance of the expiration of the statute of limitations).  Accordingly, the Court finds that Plaintiff exercised due diligence in ascertaining the Defendants' names.

Conspicuously, Defendants do not argue that the filing of Plaintiff's Amended Complaint prejudices them, and the Court will not infer prejudice.  See Farrell, 299 A.2d at 400 (affirming Appellate Division's reversal of the dismissal of plaintiffs' complaint where there was "no suggestion that the lapse of time resulted in loss of evidence or impairment of ability to defend" or gave the plaintiffs an advantage, and the "absence of prejudice, reliance or unjustifiable delay" militated in favor of affording plaintiffs their day in court on the merits of their claim).

In conclusion, the Court finds that Plaintiff's claims are not barred by the statute of limitations.

## B.    Plaintiff's § 1983 Claims

42 U.S.C. § 1983 provides a cause of action for certain violations of an individual's constitutional rights.  The statute provides, in relevant part,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

In order to state a claim for relief under section 1983, a plaintiff must allege "the violation of a right secured by the Constitution or laws of the United States" and "that the alleged deprivation was committed or caused by a person acting under color of state

law." Cope, 2013 WL 812130, at *3 (citing West v. Atkins, 487 U.S. 42, 48 (1988);

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011)).

Plaintiff alleges that Defendants violated his Eighth Amendment rights by "deliberately and intentionally fail[ing] to provide the necessary treatment for Plaintiff's ulcerative colitis . . . despite having knowledge of Plaintiff's serious medical needs." (Am. Compl. ¶ 84). Plaintiff alleges that certain customs, policies, usages, practices, procedures and rules of Defendant CMS were the direct and proximate cause of the violations of Plaintiff's constitutional rights, and that Defendants Meeker, Soliman, Anicette, and Martin participated in the creation of these policies. (See generally Am. Compl. ¶¶ 81-109).

Defendants[3] dispute these allegations and counter:  (1) Plaintiff failed to articulate any relevant custom or policy that would satisfy the "personal involvement" requirement of a claim for deliberate indifference as to CMS; (2) Plaintiff failed to articulate the roles of Meeker, Soliman, and Anicette as policymakers sufficient to satisfy the "personal involvement" requirement of a claim for deliberate indifference; and (3) Plaintiff does not claim that Meeker, Soliman, and Anicette had any personal involvement in the medical care and treatment provided to the Plaintiff during his incarceration at SWSP as is required to state a claim for deliberate indifference.

All Defendants argue that Plaintiff does not state a claim for deliberate indifference, as Plaintiff's complaints represent mere disagreements as to the extent of the necessary medical treatment.

_____

[3] Plaintiff alleges that Defendant Martin was involved in creating CMS's unconstitutional policies, which were implemented at SWSP.  Defendants do not dispute Martin's designation as a policymaker.

14

For the reasons hereinafter state, the Court finds that the Plaintiff has sufficiently alleged a cause of action under 42 U.S.C. § 1983.

       1.      <u>Plaintiff's Claim of Deliberate Indifference</u>

Under the Eighth Amendment, a prisoner has a right to be free from cruel and unusual punishment, which includes deliberate indifference to a prisoner's serious medical needs. <u>Ham v. Greer</u>, 269 F. App'x 149, 151 (3d Cir. 2008) (citing <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976)). To properly state a claim for a violation of the Eighth Amendment, Plaintiff must allege: (1) a serious medical need; and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. <u>See Natale v. Camden Cnty. Corr. Facility</u>, 318 F.3d 575, 582 (3d Cir. 2003).

"A medical need is serious if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." <u>Maldonado v. Terhune</u>, 28 F. Supp. 2d 284, 289 (D.N.J. 1998) (internal quotation marks omitted). Further if a denial or delay of medical attention "causes an inmate to suffer a life-long handicap or permanent loss", serious medical need may also be found. <u>Id.</u> (quoting <u>Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir.1987), cert. denied, 486 U.S. 1006 (1988).

Once a serious medical need has been shown, an inmate then must show that "prison officials acted with deliberate indifference to his serious medical need." <u>Farmer v. Brennan</u>, 511 U.S. 825, 837-38 (1994). Deliberate indifference is manifest "[w]here prison authorities deny reasonable requests for medical treatment . . . and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury' . . . . Similarly, where 'knowledge of the need for medical care [is accompanied by the] . . .

15

intentional refusal to provide that care,' the deliberate indifference standard has been met." Lanzaro, 834 F.2d at 346 (citations omitted).  Deliberate indifference rises well above mere malpractice or negligence; "it is a state of mind equivalent to reckless disregard of a known risk of harm." Andrews v. Camden Cty., 95 F. Supp. 2d 217, 228 (D.N.J. 2000).

Plaintiff has alleged deliberate indifference as to CMS, an entity, and Meeker, Soliman, and Anicette in their official and individual capacities.  In order to sustain a claim against an entity for deliberate indifference under section 1983, a plaintiff must allege that the entity had a policy or custom in place, which triggered the constitutional violation at issue.  See Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 691-92 (1978); Natale, 318 F.3d at 583-84.  As to Plaintiff's claims against Meeker, Soliman, and Anicette in their official capacities, these claims will be treated as suits against CMS. See Hafer v. Melo, 502 U.S. 21, 25 (1991) (quoting Kentucky v. Graham, 473 U.S. 159 (1998) ("[o]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent . . . [thus] [s]uits against state officials in their official capacity therefore should be treated as suits against the State.")).

The Court will separately address Plaintiff's allegations against Meeker, Soliman, and Anicette in their individual capacities. See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenille Det. Ctr., 372 F.3d 572, 586 (2004) ("[i]ndividual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the constitutional harm.").

a)      Plaintiff Has Alleged a Serious Medical Need.

Plaintiff has alleged that he has a serious medical need.  In Plaintiff's Amended

Complaint he states, among other ailments, that he suffers from ulcerative colitis, and that

this condition requires constant medical attention.  (Am. Compl. ¶¶ 19-23).  Plaintiff

alleges that the ineffective treatment he received at SWSP led to a range of severe health

problems, which include a life-long handicap and permanent loss due to the surgical

removal of his colon and rectum, the result of which he is now dependent on an ostomy

pouch.  (Am. Compl ¶¶ 70-76).  These allegations are sufficient to establish that Plaintiff

had a serious medical need.  See Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) (at a

motion-to-dismiss stage, the plaintiff adequately alleged a serious medical need where he

alleged that his back condition "required significant and continuous medication, and []

caused him excruciating pain" and that "within the brief period described in his

complaint" he fell "or collapsed from the pain twice . . . exposing himself to further

injury."); Ramos v. Lamm, 639 F.2d 559, 576 (10th Cir. 1980) (holding medical need

serious where "continued and unnecessary pain and loss of teeth" resulted from delay in

providing oral surgery).

b)      Plaintiff Has Alleged Acts and Omissions by Defendants
that Indicate Deliberate Indifference to His Serious Medical Needs.

Plaintiff's Amended Complaint avers that CMS engaged in a policy or custom of

routinely denying or delaying access to necessary medical care for non-medical reasons

and/or for its own financial savings.  (Am. Compl. ¶ 78).  These customs and policies

resulted in the permanent injuries complained of in Plaintiff's Amended Complaint.

(Id.).  Plaintiff claims that this mismanagement by CMS ultimately resulted in the State

of New Jersey and NJDOC refusing to renew CMS's contract for non-compliance.  (Id. ¶¶ 65-67).

Plaintiff claims that the State of New Jersey intended to assess CMS a $3 million penalty.  (Id. ¶ 67).  Plaintiff states that as a result of the non-renewal of its contract and the prospective penalty, CMS "further tightened its existing unconstitutional policy of restricting access to specialists, outside medical providers, and non-formulary medications for non-medical reasons in order to save money at the expense of inmates' health and well-being."  (Id. ¶ 68).

Plaintiff need not offer detailed evidence at this point.  Plaintiff has set forth enough that these claims are plausible on their face.  See e.g., Durmer v. O'Carroll, 991 F.2d 64, 68-69 (3d Cir. 1993) ("there is some evidence in the record suggesting that defendant might have had a motive for deliberately avoiding physical therapy, namely, that physical therapy would have placed a considerable burden and expense on the prison and was therefore frowned upon throughout the prison health system . . . if the failure to provide adequate care in the form of physical therapy was deliberate, and motivated by non-medical factors, then Durmer has a viable claim"); Lanzaro, 834 F.2d at 347-49, 351 (holding that County's policy resulting in "categorical denial of elective, nontherapeutic abortions constitutes deliberate indifference to serious medical needs under both prongs of Estelle.").

As to Defendants Meeker, Martin, Soliman, and Anicette, Plaintiff Amended Complaint avers, "Defendant CMS convened approximately four to five meetings per month which were attended by Defendants Meeker, Martin, Anicette and/or Soliman during which CMS policies were formulated and disseminated.  Defendants CMS,

18

Meeker, Martin, Anisette and Soliman created or participated in the creation of the policies pursuant to which Plaintiff's constitutional rights were violated as set forth herein." (Am. Compl. ¶ 14). Plaintiff alleges that Defendant Meeker was CMS's Vice President of Operations for the State of New Jersey, Defendant Anicette was its State Medical Director for the State of New Jersey including SWSP, and Defendant Soliman was the Associate State Medical Director for the State of New Jersey including SWSP. (Id. ¶¶ 10-13).

"Individual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the constitutional harm." A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenille Det. Ctr., 372 F.3d 572, 586 (2004) (internal quotation marks and alterations omitted).

Plaintiff's allegations in the Amended Complaint as to the Meeker, Martin, Soliman, and Anicette's positions with CMS and their involvement in monthly meetings setting forth policies and customs would make it more plausible that these individual defendants are policymakers and not low-level employees. The Court concludes that Plaintiff has sufficiently alleged a claim for deliberate indifference against Meeker, Martin, Soliman, and Anicette in their individual capacities.

<h3 style="text-align:center">2.    Disagreements as to Plaintiff's Medical Treatment</h3>

Defendants' remaining argument is that Plaintiff does not state a claim for deliberate indifference because he merely disagrees with the course of treatment he received, and this is plainly insufficient to allege a constitutional violation.

Defendants are correct that a claim of deliberate indifference under section 1983 cannot be based on "mere disagreement as to the proper medical treatment" of a prisoner. Lanzaro, 834 F.2d at 346.  However, deliberate indifference can exist when prison doctors deny or delay medical care or "intentionally interfere[] with the treatment once prescribed." Estelle, 429 U.S. at 104; White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).  Further, a prison official "may not, with deliberate indifference to the serious medical needs of the inmate, opt for 'an easier and less efficacious treatment' of the inmate's condition." Lanzaro, 834 F.2d at 347 (quoting West v. Keve, 571 F.2d 158; 162 (3d Cir. 1978) (internal quotations omitted)).

The Defendants argue that:  "where the plaintiff has received some care, inadequacy or impropriety of the care that was given will not support an Eighth Amendment claim."  (CMS Br. 22; Anicette Br. 22 (quoting Holly v. Rapone, 476 F. Supp. 226, 231 (E.D. Pa. 1979)).  Defendants argue that Plaintiff admits that during his time at SWSP his condition was monitored by various nurses, he had a lab test done, and Defendant Martin prescribed him a "nutritional supplement."  Thus, Defendants argue that Plaintiff received some treatment by his own admission and even if that treatment constitutes inappropriate care, the required subjective knowledge fails to exist to impose liability upon the healthcare professionals involved.  (CMS Brief 23; Anicette Br. 23).

Plaintiff submits, that deliberate indifference under section 1983 can be established even when medical treatment is administered.  Deliberate indifference can occur when a prison official continues a type of treatment known to be ineffective and administered "in the face of resultant pain and risk of permanent injury," or when a prior doctor's orders have been ignored.  White, 897 F.2d at 109 (citing Martinez v. Mancusi,

443 F.2d 921 (2d Cir. 1970)).  Plaintiff contends that Defendant Martin's actions

constitute deliberate indifference because he ignored the prior orders of Doctor Melendez

and Nurse Practitioner Mills.  (Pl.'s Br. 36, Doc. No. 76).  Doctor Melendez noted in the

Plaintiff's EMR that he required an IV for hydration and a gastroenterologist ("GI")

consultation, while Nurse Practitioner Mills prescribed oral and IV fluids for hydration.

(Am. Compl. ¶¶ 31, 35).  Plaintiff claims that Defendant Martin exhibited deliberate

indifference by:  (1) failing to administer the IV fluids; (2) failing to follow through with

a GI consult; (3) failing to treat Plaintiff's melena and bloody stools; (4) failing to treat

Plaintiff's diarrhea and abdominal pains; (5) ignoring Plaintiff's deteriorating medical

condition; and (6) transferring Plaintiff to the general prison population when medical

personnel had admitted Plaintiff to the infirmary earlier that day.

Plaintiff's numerous visits to the infirmary and Plaintiff's EMR shows that

Plaintiff was suffering intense pain, which could result in serious lasting injury if he was

not adequately treated.

Plaintiff has set forth sufficient allegations to state a claim as to all Defendants.

See White, 897 F.2d at 110 (holding that a doctor's disregard for a prior doctor's orders

was sufficient to survive a motion to dismiss when the doctor saw the inmate's condition

worsen but did not change his treatment).

**V.      CONCLUSION**

      For the reasons stated above, the Court will deny Defendants' motions to dismiss.

An appropriate order shall issue today.

Dated:  9/30/2013                              /s/ Robert B. Kugler
                                                   ROBERT B. KUGLER
                                                   United States District Judge