| | |
|---|---|
| **MARKS, O'NEILL, O'BRIEN, DOHERTY & KELLY, P.C.** | |
| **Sean X. Kelly, Esquire (03456-1998)** | **ATTORNEYS FOR DEFENDANT** |
| **Sean Robins, Esquire (01953-1993)** | **Corizon, Inc., f/k/a Correctional Medical** |
| **6981 N. Park Drive** | **Services, Inc. (CMS), David Meeker,** |
| **Suite 300** | **Allan Martin, M.D., Lionel Anicette,** |
| **Pennsauken, NJ   08109** | **M.D. and Yasser Soliman, M.D.** |
| **(856) 663-4300** | |

**431-88326 (SR)**

| | |
|---|---|
| **Elvis Soto-Muniz** | **UNITED STATES DISTRICT COURT** |
| | **DISTRICT OF NEW JERSEY** |
| vs. | **CAMDEN VICINAGE** |
| | |
| **Corizon, Inc., f/k/a Correctional Medical Services, Inc. (CMS), David Meeker, Allan Martin, M.D., Lionel Anicette, M.D. and Yasser Soliman, M.D.** | **DOCKET NO.  1:2010-cv-03617** |
| | **CIVIL ACTION** |

**REPLY BRIEF OF DEFENDANTS, CORIZON, INC.,
F/K/A CORRECTIONAL MEDICAL SERVICES, INC., ALLAN MARTIN, M.D.,
LIONEL ANICETTE, M.D., YASSER SOLIMAN, M.D. AND DAVID MEEKER,
<u>IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT</u>**

On The Brief:

Sean Robins, Esquire
**MARKS, O'NEILL, O'BRIEN, DOHERTY & KELLY, P.C.**
6981 N. Park Drive
Cooper River West - Suite 300
Pennsauken, NJ  08109

**REPLY BRIEF OF DEFENDANTS, CORIZON, INC.,
F/K/A CORRECTIONAL MEDICAL SERVICES, INC., ALLAN MARTIN, M.D.,
LIONEL ANICETTE, M.D., YASSER SOLIMAN, M.D. AND DAVID MEEKER,
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, AND IN
<u>RESPONSE TO PLAINTIFF'S, ELVIS SOTO-MUNIZ, OPPOSITION</u>**

Presently pending in this matter is the Motion for Summary Judgment of Defendants, Corizon, Inc., F/K/A Correctional medical Services, Inc. ("CMS"), Allan Martin, M.D. ("Martin"), Lionel Anicette, M.D. ("Anicette"), Yasser Soliman, M.D. ("Soliman") and David Meeker ("Meeker"), filed on September 22, 2014.  (Docket No. 113)  On October 3, 2014, Plaintiff's request for an automatic extension of the return date for the motion, per Rule 7.1, was granted, and the return date extended to November 3, 2014.  On October 17, 2014, the Court granted Plaintiff's request for a further extension, and the return date was extended to November 17, 2014.  On October 31, 2014, Plaintiff requested a further extension, and on November 17, 2014, the Court granted the request, and extended the return date to December 1, 2014.

On November 17, 2014, the Plaintiff filed a Brief in Opposition to Defendants' Motion for Summary Judgment.  (Docket No. 119)  Counsel for Defendants, on November 18, 2014, requested an extension of the deadline for the filing of Defendants' Reply Brief by fourteen  (14) days, which the Court granted.  (Docket No. 121)

The Defendants' Reply Brief in Support of Motion for Summary Judgment, and in response to Plaintiffs' opposition now follows.

**<u>REPLY BRIEF</u>**

**I.      <u>INTRODUCTION</u>**

This matter involves claims by Plaintiff, Elvis Soto-Muniz  ("Plaintiff"), alleging deliberate indifference to his serious medical needs, pursuant to 42 U.S.C. §1983, as against the

Defendants, allegedly arising from medical care of the Plaintiff's ulcerative colitis condition, while under the treatment of Dr. Martin at South Woods State Prison, primarily during the period of July 17, 2008, when he was transferred to South Woods from CRAF (Central Reception and Assignment Facility), through August 6, 2008, when Plaintiff was hospitalized for further treatment at St. Francis Medical Center.

With respect to Defendant, Dr. Martin, Plaintiff has alleged deliberate indifference arising from the medical care and treatment provided to Plaintiff for his ulcerative colitis between July 17, 2008 and August 6, 2008.

As against Defendants, CMS, Dr. Anicette, Dr. Soliman and Mr. Meeker, the Plaintiff alleges the existence of a custom or policy which resulted in the alleged deliberate indifference. In addition, Plaintiff asserts that Defendants, Anicette, Soliman and Meeker are responsible for the alleged deliberate indifference, via the doctrine of *respondeat superior*. Finally, the Plaintiff has alleged violation of his rights under the First Amendment as against the Defendants.

## II.   PLAINTIFF HAS FAILED TO ESTABLISH THAT DR. MARTIN ACTED WITH DELIBERATE INDIFFERENCE

Defendants have addressed Plaintiff's claim of deliberate indifference to Plaintiff's serious medical need (ulcerative colitis)[1], asserted pursuant to 42 U.S.C. §1983, against Defendant, Dr. Martin, in Parts I and II of their Brief in support of summary judgment. Plaintiff, in his Brief in opposition to the motion ("P.Oppn."), addresses his deliberate indifference claim against Dr. Martin in Part I-B of his brief (P.Oppn., at 4-9); and separately addresses therein his allegations concerning a GI consultation for the Plaintiff (P.Oppn., at 9-10). Plaintiff further

---

[1] It is unclear why the Plaintiff addresses the question of *whether* he suffers from a serious medical need. (See Part I-A of his opposition). The Defendants have not contended that ulcerative colitis does not constitute a "serious medical need".

addresses at Part II of his brief, the issue of the disagreement with the course and selection of Plaintiff's treatment (P.Oppn., at 10-11).

Clear from the record in this matter (See Defendants' Statement of Uncontested Facts, "SUF," throughout; and Plaintiff's Amended Complaint)[2], and undisputed even in Plaintiffs' opposition brief, is one simple fact: The Plaintiff was never denied medical care and treatment for his ulcerative colitis - which condition was extensively treated and addressed throughout the relevant time period. What is disputed by the Plaintiff, however, is the alleged *adequacy* of that treatment. The challenge to the adequacy of the treatment provided, rather than the *fact* of whether treatment was provided, brings to the forefront of the court's consideration on this motion two things: First, the nature and scope of the treatment provided. And second, the nature of the Plaintiff's challenges to that treatment.

As to the first, the record indisputably establishes that throughout the relevant time period, the Plaintiff received substantial medical care and treatment, in the treatment of his ulcerative colitis and symptoms, in the continuous provision of medication for his condition, in the monitoring and evaluation of his condition on an ongoing basis, and in the referral of the Plaintiff for outside consultation. As to the second, the Plaintiff's challenge amounts to a disagreement, not as to *whether* medical care and treatment was provided, but as to whether that treatment was *adequate*; that is, the Plaintiff disagrees with the choice and direction of the medical care provided to him.

Throughout his incarceration in the New Jersey Department of Corrections, from his initial period at CRAF (The Central Reception and Assignment Facility), from July 10, 2008 to July 17, 2008, through his transfer and stay at South Woods State Prison, from July 17, 2008,

---

[2] As of the filing of this Reply Brief, the Plaintiff has failed to provide a response to Defendants' Statement of Undisputed Facts, submitted in support of the Motion.

until his transfer to St. Francis Medical Center for further treatment (and eventual surgery), on August 6, 2008, the record thoroughly demonstrates that the Plaintiff received ongoing medical care and treatment from his ulcerative colitis, from the CMS medical personnel at CRAF, and then from Dr. Martin, and the CMS medical personnel at South Woods.  (See SUF, at ¶¶24-59; Defendants' Brief in Support of Motion for Summary Judgment, "D.Brief," at 5-17)

The Plaintiff in his opposition to the motion, very loosely attempts to ignore the two-pronged requirements for a claim of deliberate indifference  -  subjective and objective, *each of which* must be met in order to demonstrate that a defendant acted with deliberate indifference.  A plaintiff must demonstrate  -  with evidence sufficient to support a jury verdict in his favor  -  both that a defendant's actions in responding to an inmate's medical needs were **objectively** deliberately indifferent, and that **subjectively** the defendant had actual knowledge that his actions presented a substantial risk of harm to the inmate, and adopted that course of conduct nonetheless.

The defendant "must be both aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and he **must also draw the inference**."  Farmer v. Brennan, 114 S.Ct. 1970, 1979 (1994).  It is not sufficient that the defendant "should have been aware."  Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001)  "An unwitting failure to provide adequate medical care, a negligent diagnosis or treatment, or even medical malpractice, does not support a valid claim under the Eighth Amendment."  Coletta v. Board of Freeholders of Ocean County, 20067 U.S.Dist. LEXIS 2717 (3d Cir. 2007).

The Plaintiff has failed to adduce evidence sufficient to support a jury verdict as to either the objective or subjective components of deliberate indifference, both of which are required to sustain a claim of an Eighth Amendment violation.

The undisputed record of the treatment rendered to the Plaintiff (SUF, at ¶¶24-59) demonstrates the inability of the Plaintiff to establish the existence of the objective component of deliberate indifference, with respect to the medical care and treatment provided to the Plaintiff, by both Dr. Martin and the other medical personnel who treated him at CRAF and South Woods. The following summary of treatment provided to the Plaintiff during the relevant time period demonstrates the inability of the Plaintiff to satisfy the objective component of his deliberate indifference claim:

- - - - - - - - - -

**Plaintiff's medical encounters with nursing and medical staff**: On **July 10, 2008** the Plaintiff was seen medically by Nurses Williams and Levin. (SUF, at ¶¶25-26) On **July 15, 2008**, Plaintiff was seen at sick call by Nurse Hewins. (SUF, at ¶28) On **July 16, 2008**, the Plaintiff was seen at sick call by Dr. Melendez. (SUF, at ¶29) On **July 17, 2008**, the Plaintiff was seen in admission assessment by Nurses Kuty, Willett and Ricalde in infirmary rounds. (SUF, at ¶¶30-32, 36) On **July 18, 2008**, the Plaintiff was seen in infirmary rounds by Nurses Bigay, Welch and Kudla. (SUF, at ¶¶33-34, 37) On **July 18, 2008**, the Plaintiff was also seen for the first time, in infirmary rounds, by Dr. Martin. (SUF, at ¶35) On **July 19, 2008**, the Plaintiff was seen in infirmary rounds by Nurse Gray. (SUF, at ¶38) On **July 29, 2008**, the Plaintiff was seen in infirmary rounds by Nurses Welch, Kudla and Gray. (SUF, at ¶¶39-41) On **July 21, 2008**, the Plaintiff was seen in infirmary rounds by Nurses Bigay and Welch, and then by Nurse Ricalde. (SUF, at ¶¶42-43, 45) On **July 21, 2008**, the Plaintiff was also seen for the second time, in infirmary rounds, by Dr. Martin. (SUF, at

5

¶44) On **July 25, 2008**, Plaintiff was seen at sick call by Nurse Green. (SUF, at ¶49) On **August 1, 2008**, the Plaintiff was seen at sick call by Nurse Green. (SUF, at ¶51) In **August 1, 2008**, the Plaintiff was seen for the third time, in infirmary rounds, by Dr. Martin. (SUF, at ¶53) On **August 5, 2008**, the Plaintiff was seen at sick call by Nurse Green, who at that time examined and evaluated his condition, and wrote for the use of a wheelchair and lower bunk. (SUF, at ¶56) On **August 6, 2008**, the Plaintiff was seen in a follow-up visit with Nurse Green, who examined him, obtained vital signs, and based on her evaluation, contacted Dr. Martin and recommended that Plaintiff be sent to St. Francis Medical Center for further evaluation and treatment. (SUF, at ¶¶58-59) Dr. Martin agreed, and ordered that Plaintiff be sent to St. Francis. (SUF, at ¶59)

**Dr. Martin's encounters with Plaintiff**: On **July 18, 2008**, Plaintiff was first seen by Dr. Martin. Dr. Martin examined and evaluated the Plaintiff. Dr. Martin ordered courses of Hydrocodone-Acetaminophen and Prednisone for the Plaintiff, and discontinued the order for Acetaminophen. (SUF, at ¶35) On **July 21, 2008**, the Plaintiff was seen for the second time by Dr. Martin. He examined and evaluated the Plaintiff, and wrote for discharge to general population at that time, and ordered lab testing and a GI consult. (SUF, at ¶44) On **August 1, 2008**, the Plaintiff was seen for the third time by Dr. Martin. Dr. Martin examined the Plaintiff, noted that a GI consult was pending, and wrote for the continuation of "supportive care." At that time he determined that the Plaintiff could return to general population. (SUF, at ¶53) Dr. Martin testified that:

> Vital signs were good. He was not bleeding that we had witnesses. He was taking some soft diet. He was eating, taking in some

6

> liquids.  He was ambulatory.  Felt he was stable enough to go out into general population again.  (SUF, at ¶97)

On **August 6, 2008**, Dr. Martin was contacted by Nurse Green, following her examination and evaluation of the Plaintiff, at which time Nurse Green, based on that assessment at that time, recommended that the Plaintiff be sent to St. Francis Medical Center for further evaluation and treatment.  Dr. Martin agreed, and ordered Plaintiff sent to St. Francis.  (SUF, at ¶¶58-59)

**Referral for GI Consultation**:  On **July 21, 2008**, Dr. Martin completed and submitted a referral request for a GI consult for the Plaintiff.  (SUF, at ¶¶44, 46)  In the referral request, Dr. Martin stated that:

> I/M has a h/o  [history of]  ulcerative colitis, that has been refractory to several medical treatments.  He states that he has been on asacol, remicade, and prednisone at various times w/o success.  He has cont[inued] to have abd[ominal] pain and rectal bleeding.  Pls. evaluate.

On **July 22, 2008**, Dr. Soliman, the Associate Statewide Medical Director approved the request; and on **July 23, 2008**, Nurse Gaebler, the Utilization Management Nurse, approved the request, and noted that "Criteria met."  (SUF, at ¶46)  Within two  (2)  days of Dr. Martin's submission of the GI consult referral request, the GI consult had been approved, and was scheduled to take place on August 13, 2008, at New Jersey State Prison.  (SUF, at ¶46)  Contrary to the Plaintiff's allegations, the Plaintiff was never denied a GI consultation, in fact, it was requested by Dr. Martin within days of his coming to South Woods, and was approved and scheduled within two (2) days of Dr. Martin's order.  The Plaintiff, however, was transferred to St. Francis Medical Center a week prior to the date scheduled, and had GI consultations instead at the hospital.

7

**Medications provided to the Plaintiff**:  On **July 10, 2008**, the Plaintiff was placed on courses of Sulfasalazine and Prilosec.  (SUF, at ¶26)  On **July 15, 2008**, Plaintiff was placed on Acetaminophen, and provided a supply to use as needed.  (SUF, at ¶28)  On **July 18, 2008** the Plaintiff was placed on courses of Hydrocodone-Acetaminophen and Prednisone, and taken off of the Acetaminophen.  (SUF, at ¶35)  On **July 21, 2008**, Dr. Martin placed Plaintiff on a course of Twocal liquid nutritional supplement, three times per day.  (Ex. "P", 7/21/08)  On **July 22, 2008**, Dr. Martin adjusted the dosage of the order for Hydrocodone-Acetaminophen.  (SUF, at ¶47)  As of **July 25, 2008**, the EMR noted that the Plaintiff was on courses of Sulfasalazine, Prilosec, Prednisone, Twocal liquid nutritional supplement, and Hydrocodone-Acetaminophen.  (SUF, at ¶49)  Again, as of **August 5, 2008**, it was noted that the Plaintiff was on courses of Sulfasalazine, Prilosec, Prednisone, Twocal liquid nutritional supplement, and Hydrocodone-Acetaminophen.  (SUF, at ¶57)

**Oral hydration of the Plaintiff**:  On **July 15, 2008**, the EMR shows that the Plaintiff was "drinking liquids."  (SUF, at ¶28)  On **July 17, 2008**, an order was written to "push oral fluids."   On **July 17, 2008**, when nursing personnel were unable to insert an IV, the Plaintiff was "given oral fluids and encouraged to drink as much as he can," and the Plaintiff "state[d] compliance."  (SUF, at ¶32)  On **July 18, 2008**, the Plaintiff was "instructed to drink copious amounts of fluids."  (SUF, at ¶33)  On **July 18, 2008**, another nurse further "encouraged more fluid intake" of the Plaintiff, and noted to "continue to monitor."  (SUF, at ¶36)  On **July 18, 2008**, another nurse provided the Plaintiff with a liquid nutritional

supplement, and further "encouraged [Plaintiff] to drink more water," which the Plaintiff "verbalize[d] understanding." (SUF, at ¶37) On **July 19, 2008**, the nurse noted that the Plaintiff has been taking liquid nutritional supplements. (SUF, at ¶38) On **July 20, 2008**, the Plaintiff was noted to be "drinking fluids." (SUF, at ¶40) On **July 20, 2008**, another nurse noted that the Plaintiff was "increasing fluids as instructed." (SUF, at ¶41)

**Laboratory testing**: On **July 11, 2008** results of laboratory testing of the Plaintiff were obtained. (SUF, at ¶27) On **July 30, 2008**, additional laboratory testing was drawn (SUF, at ¶¶50-51), and the results received on **August 1, 2008**.

- - - - - - - - - -

Throughout the relevant period of time, as outlined above, the Plaintiff received continuous care and treatment, evaluation and medication for his ulcerative colitis. At no point was the Plaintiff ever denied medical care and treatment. He was seen by medical personnel on an almost daily basis, at times by multiple personnel, and was also seen each time he requested that he be seen at sick call. When he was seen, he was examined, and his condition evaluated, and treatment provided as per the medical judgment of each nurse and/or physician attending. The Plaintiff was seen by Dr. Martin on three occasions during the relevant time period; he was examined and evaluated, provided with medication, lab testing, and a GI consult was requested, approved and scheduled by the provider to take place on August 13, 2008, at New Jersey State Prison. (The August 13, 2008 consult had not yet taken place when, on August 6, 2008, based upon the view of Dr. Martin and Nurse Green that his condition warranted at that time immediate specialty treatment, the Plaintiff instead was transferred to St. Francis Medical Center for further evaluation and treatment.)

9

The Plaintiff has failed to show that he has or can adduce evidence sufficient to sustain his burden of demonstrating the existence of the objective prong of a deliberate indifference claim as directed to Dr. Martin.  Further, the Plaintiff has likewise failed to set forth any evidence to support the subjective prong of deliberate indifference.  (*See further discussion under Part III, below*)  The failure to establish either the objective or subjective components of a deliberate indifference claim dooms the Plaintiff's claim against Dr. Martin, and as such, this motion should be granted, and Plaintiff's claims against Dr. Martin dismissed with prejudice.

### III. PLAINTIFF'S DISAGREEMENT AS TO THE COURSE OF THE MEDICAL CARE AND TREATMENT PROVIDED FAILS TO ESTABLISH A CLAIM OF DELIBERATE INDIFFERENCE

The existence of a disagreement as to the course and selection of medical care and treatment provided to an inmate does not form the basis for a claim of deliberate indifference under 42 U.S.C. §1983.  (See D.Brief, Part II, at 20-25)  As argued therein, the Supreme Court, and the courts of the Third Circuit, have consistently held, complaints as to the quality or appropriateness of medical care  (i.e., claims based in negligence)  provided to an inmate never support a claim for an Eighth Amendment violation.  (See, e.g., Daniels v. Williams, 474 U.S. 327 (1986); and Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987)).  "Where [an inmate] has received some care, inadequacy or impropriety of the care that was given will not support an Eighth Amendment claim."  Holly v. Rapone, 476 F.Supp. 226 (E.D.Pa. 1979), quoting Roach v. Kligman, 412 F.Supp. 421, 525 (E.D.Pa. 1976).

Challenges based on the *timeliness* of treatment sound in negligence, and fail to support a deliberate indifference claim.  Farmer v. Carlson, 685 F.Supp. 1335, 1339 (M.D.Pa. 1988) ("the key question is . . . whether defendants have provided plaintiff with some type of treatment

10

regardless of whether it is what the plaintiff desires.")  Further, the choice of *whether* to provide *any particular* type or form of treatment likewise fails to support a claim of deliberate indifference.

In Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court, in its seminal treatment of the requirements of a deliberate indifference claim under 42 U.S.C. §1983, examined whether an inmate's claim that the treatment he received, and that which he did not receive, for a back condition, constituted deliberate indifference.  The Court found that the inmate's claims against his treating physician - who was also the facility's medical director - failed to establish a claim under §1983:

> Even applying these liberal standards, however, [the plaintiff's] Gamble's claims against Dr. Gray, both in his capacity as treating physician and as medical director of the Corrections Department, are not cognizable under § 1983. Gamble was seen by medical personnel on 17 occasions spanning a three-month period: by Dr. Astone five times; by Dr. Gray twice; by Dr. Heaton three times; by an unidentified doctor and inmate nurse on the day of the injury; and by medical assistant Blunt six times.  They treated his back injury, high blood pressure, and heart problems. . . . his complaint is "based solely on the lack of diagnosis and inadequate treatment of his back injury." . . . The doctors diagnosed his injury as a lower back strain and treated it with bed rest, muscle relaxants, and pain relievers. [The plaintiff] contends that more should have been done by way of diagnosis and treatment, and suggests a number of options that were not pursued. . . . The Court of Appeals agreed, stating: "Certainly an X-ray of [Gamble's] lower back might have been in order and other tests conducted that would have led to appropriate diagnosis and treatment for the daily pain and suffering he was experiencing." . . . **But the question whether an X-ray - or additional diagnostic techniques or forms of treatment - is indicated is a classic example of a matter for medical judgment.** A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice.

429 U.S. 97, 107-108.  The Supreme Court upheld the District Court's dismissal of the plaintiff's §1983 claim against the treating physician alleging that the medical treatment provided was insufficient.  Id.

11

In our case, the Plaintiff challenges the course of treatment with which he was provided at South Woods, by Dr. Martin and other medical personnel.  For example, the Plaintiff challenges the treatment of dehydration associated with the symptoms of his ulcerative colitis.  The Plaintiff does not allege that Dr. Martin and the South Woods medical personnel *failed* to treat this condition, bat rather, that the treatment differed from that which had been ordered by *other medical personnel* at CRAF, and which the Plaintiff and his expert believe as *more* appropriate.  Both prior to  (at CRAF), and following his arrival at South Woods, various attempts were made to insert an IV into the Plaintiff, for the purpose of administering fluids.  As documented in the records, and due to the Plaintiff's own extensive history of IV drug abuse, medical personnel were unable to obtain a vein for the purpose of inserting an IV.

As discussed in more detail in Defendants' brief in chief, it was decided, in the exercise of the sound medical judgment of Dr. Martin and the other medical personnel at South Woods, that so long as the Plaintiff was able to take in liquids orally - which was clearly the case, as the record documents - this was a suitable alternative method of addressing Plaintiff's dehydration to the IV which could not be started.  Further, as is documented throughout the Plaintiff's medical records, he was constantly encouraged to take in oral liquids, he was able to do so, and indicated that he would and was doing so.  Further, in conjunction with these efforts, the Plaintiff was prescribed a daily course of a liquid nutritional supplement, that provided both additional calories and liquid intake.  The fact that the Plaintiff, and even other medical sources, may believe that the use of an IV would have been more appropriate, fails to convert the medical judgment exercised in the choice of treatment into support for deliberate indifference.

At no point, with respect to any medical issue raised by the Plaintiff, is it alleged that the Plaintiff was denied treatment; however, it is the *choice* of treatment with which the Plaintiff

takes issue.  Primarily, Plaintiff points to the use of oral hydration  (i.e., the drinking of water and intake of liquid nutritional supplements), rather than the use of IV hydration, which had been originally recommended by the medical personnel at CRAF, prior to Plaintiff's transfer to South Woods, and coming under the care of Dr. Martin.  Once at South Woods, Dr. Martin exercised his medical judgment in determining, under the circumstances, that oral hydration was an adequate form of hydration for the Plaintiff.   Throughout his treatment at South Woods during the relevant time period, the Plaintiff was both encouraged to drink "copious amounts of fluids," but it was determined, through observation and discussion with the Plaintiff, that he was both capable of the oral intake required, and cooperative in doing so.  (See further in Part II-A, above) Despite Plaintiff's unsupported assertions to the contrary, the Plaintiff point to no evidence whatsoever that Dr. Martin's subjective intent was to provide inappropriate or inadequate medical care to the Plaintiff.

The Plaintiff argues that he should have been kept for longer periods in the prison's infirmary, rather than in general population.  However, as the record demonstrates, upon each transfer between the infirmary and general population, the Plaintiff's condition was assessed, and it was determined, again based upon the sound medical judgment of Dr. Martin  (and others), that at the time of each return to general population, it was no longer necessary for the Plaintiff to remain in the infirmary.  Again, the Plaintiff disagrees with these decisions, but there is no evidence that Dr. Martin, or anyone else at South Woods, intentionally provided inappropriate medical care and treatment to the Plaintiff.

There is simply no evidence provided by the Plaintiff in response to this motion, that the subjective intent of Dr. Martin was anything but to provide appropriate medical care to the Plaintiff.  That is, the Plaintiff has failed to adduce any evidence that Dr. Martin subjectively

knew that his actions presented a substantial risk of harm to the Plaintiff.  If the Plaintiff is to prevail on a claim that Dr. Martin, rather than simply exercising his professional judgment in treating the Plaintiff, intentionally chose an "easier and less efficacious" course of treatment, the Plaintiff must be able to demonstrate that Dr. Martin *subjectively* intended to do so.  This the Plaintiff cannot, and has not done.  Instead, in the absence of evidence in support of such a contention, the Plaintiff would choose to leave it to the jury to "decipher" Dr. Martin's subjective intent.  In the absence of any evidence in support of such subjective intent, i.e., evidence which creates a dispute as to material issues of fact, the jury cannot be left to simply speculate and "decipher" out of whole cloth.

In fact, the only evidence as to Dr. Martin's subjective intent is his own testimony.  For example, Dr. Martin testified that he believed the use of oral hydration, rather than IV hydration, was medically appropriate:

> [S]ince we couldn't get an IV on him, it would be hydration by mouth, **which he was doing**.  He had no veins due to heroin use, so there was no way to get an IV in him. . . .  He wasn't throwing up, so **the thing was to encourage as much liquid intake and supplemental intake**.  [emphasis added]  (SUF, at ¶73)
>
> * * *
>
> If you go back to the notes from CRAF, they're the one that recommended an IV hydration.  We did not do that.  This came with him.  **He was eating.  He was drinking.  If someone is eating and drinking, there is no need to do this.**  [emphasis added]  (SUF, at ¶75)

With respect to the infirmary vs. general population issue, Dr. Martin testified, for instance, that when he examined the Plaintiff on July 21, 2008, that he believed the Plaintiff to be "stable," and did not need to be in the infirmary:  "But overall he seemed stable and hemodynamically he was stable and at this time he did not appear to be acutely ill enough to be in the infirmary in the extended care unit."  (SUF, at ¶77)  Dr. Martin also testified that, prior to

14

August 6, 2008, when the decision was made to transfer the Plaintiff to St. Francis Medical Center, it had not been obvious that his condition was worsening:

> It was not obvious at that time because he would get better and -- this is the way it is. It [ulcerative colitis] waxes and wanes, so that's why they call it chronic.

SUF, at ¶93.

These are but a few of the areas of treatment, and exercise of Dr. Martin's medical judgment, with which the Plaintiff disagrees. But, again, disagreement over the course of treatment, even where that disagreement is between two medical professionals, does not support a claim of deliberate indifference.

### IV. PLAINTIFF'S CUSTOM OR POLICY-BASED DELIBERATE INDIFFERENCE CLAIMS SHOULD BE DISMISSED WITH PREJUDICE

Defendants, in Part III of their Brief, seek dismissal with prejudice of the Plaintiff's custom or policy-based deliberate indifference claims against CMS and the individual CMS-defendants. Plaintiff does not oppose Defendants' summary judgment motion on this point. Rather, Plaintiff withdraws these claims, and states:

> Plaintiff hereby withdraws his claims to the extent that they rely upon the assertion that CMS has a custom or policy that resulted in deliberate indifference to Plaintiff's serious medical needs.

P.Oppn., at 12.[3]

Accordingly, the Plaintiff's claims as against CMS, including any custom or policy-based claims to the extent directed at the individual defendants, should be dismissed with prejudice.

---

[3] Plaintiff also appears to attempt to hold open the possibility, post-summary judgment, to "reinstate his claims" should a deposition of David Meeker, taken at some future time, reveal evidence to support their custom or policy-related claims. Such a "caveat" upon the Court's decision must be rejected. The statement does, however, tacitly provide the admission that the Plaintiff is wholly without evidence at this time to support such claims.

## V. PLAINTIFF'S *RESPONDEAT SUPERIOR* LIABILITY-BASED DELIBERATE INDIFFERENCE CLAIMS SHOULD BE DISMISSED WITH PREJUDICE

Defendants, in Part IV of their Brief, seek dismissal with prejudice of Plaintiff's deliberate indifference claims, to the extent based in the doctrine of *respondeat superior* liability. Plaintiff, in his opposition brief, does not oppose Defendants' summary judgment motion on this point. Rather, the Plaintiff, again, withdraws his claims for deliberate indifference "to the extent that they rely upon allegations of *respondeat superior* liability." (P.Oppn., at 12)

Accordingly, the Plaintiff's claims against the Defendants, to the extent that they are predicated upon the doctrine of *respondeat superior* liability, should be dismissed with prejudice.

## VI. PLAINTIFF'S CLAIM OF VIOLATION OF FIRST AMENDMENT RIGHTS SHOULD BE DISMISSED WITH PREJUDICE

Defendants, in Part VI of their Brief, seek dismissal with prejudice of Plaintiff's claim of violation of his rights under the First Amendment of the United States Constitution. Plaintiff, in his opposition brief, does not oppose Defendants' summary judgment motion on this point. Rather, Plaintiff once again withdraws his claim for violation of his First Amendment rights. (P.Oppn., at 14)

Accordingly, the Plaintiff's claim against the Defendants for violation of his rights under the First Amendment, should be dismissed with prejudice.

## CONCLUSION

Accordingly, and for the reasons set forth herein, and in Defendants' Brief in Support of Motion for Summary Judgment, it is respectfully requested that this Honorable Court grant the

Motion for Summary Judgment of Defendants, Corizon, Inc., F/K/A Correctional Medical Services, Inc., Allan Martin, M.D., Lionel Anicette, M.D.., Yasser Soliman, M.D. and David Meeker, and dismiss all claims against them with prejudice.

                                              Respectfully submitted,

                                              MARKS, O'NEILL, O'BRIEN,
                                              DOHERTY & KELLY, P.C.

                                              _____/s/  Sean Robins_____
                                              Sean Robins, Esquire
                                              Sean X. Kelly, Esquire
                                              Attorneys for Defendants,
                                              Corizon, Inc., F/K/A Correctional Medical Services,
                                              Inc., Allan Martin, M.D., Lionel Anicette, M.D..,
                                              Yasser Soliman, M.D. and David Meeker

DATE:  _____December 8, 2014_____