EXHIBIT A

**THE RINALDO LAW FIRM**
Richard P. Rinaldo
*rrinaldo@rinaldolaw.com*
1767 Morris Avenue, Suite 205
Union New Jersey 07083
Telephone: (908) 352-2500
Facsimile: (908) 352-2770

**REESE RICHMAN LLP**
Kim E. Richman (admitted *pro hac vice*)
*krichman@reeserichman.com*
George V. Granade (admitted *pro hac vice*)
*ggranade@reeserichman.com*
875 Avenue of the Americas, 18th Floor
New York, New York 10001
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

*Attorneys for Plaintiff Elvis Soto-Muniz*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ELVIS SOTO-MUNIZ, <br><br> Plaintiff, <br><br> v. <br><br> CORIZON, INC., F/K/A CORRECTIONAL MEDICAL SERVICES, INC.; DR. ALLAN MARTIN; DR. LIONEL ANICETTE; DR. YASSER SOLIMAN; and "JOHN DOES" #1-5 (said names being fictitious, as the true names are presently unknown), Individually and in their Official Capacities, <br><br> Defendants. | No. 1:10-cv-03617-RBK-KMW <br><br> **PLAINTIFF ELVIS SOTO-MUNIZ'S RESPONSIVE STATEMENT OF MATERIAL FACTS** |

Pursuant to Local Civil Rule 56.1(a) of the Local Civil Rules of the United States District Court for the District of New Jersey, Plaintiff Elvis Soto-Muniz ("Plaintiff") respectfully submits the following Responsive Statement of Material Facts, which addresses each paragraph in the Statement of Uncontested Facts of Defendants, Corizon, Inc., f/k/a Correctional Medical Services, Inc., Allan Martin, M.D., Lionel Anicette, M.D., Yasser Soliman, M.D. and David Meeker, in Support of Motion for Summary Judgment (Doc. No. 113-2) (the "Statement of Uncontested Facts").

## **Procedural History**

1.     Plaintiff agrees with each statement set forth in paragraph 1.[1]

2.     Plaintiff agrees with each statement set forth in paragraph 2.

3.     Plaintiff agrees with the statement set forth in paragraph 3. Plaintiff adds that his original Complaint also named "John Doe" #1-5 as defendants.

4.     Plaintiff agrees with each statement set forth in paragraph 4.

5.     Plaintiff agrees with each statement set forth in paragraph 5.

---

[1] Unless otherwise indicated, references to paragraphs herein are to the paragraphs in the Statement of Uncontested Facts that Corizon, Inc., f/k/a Correctional Medical Services, Inc. ("CMS"), Allan Martin, M.D., Lionel Anicette, M.D., Yasser Soliman, M.D., and David Meeker (collectively, "Defendants") filed on September 22, 2014. Further, each paragraph herein corresponds with the paragraph of the same number in Defendants' Statement of Uncontested Facts.

## **Plaintiff's Allegations and Claims Contained in the Amended Complaint**

6.      Plaintiff agrees with each statement set forth in paragraph 6.  Plaintiff notes that paragraph 6 omits the underlined text below from its quotation of paragraph 1 of Plaintiff's First Amended Complaint (Doc. No. 62) (the "FAC") without including an ellipsis:

> Plaintiff brings this action for compensatory damages, punitive damages and attorney's fees pursuant to 42 U.S.C. §§ 1983 and 1988, <u>as well as the laws of the State of New Jersey</u>, for the wrongful acts of Defendants . . . .

(Statement of Uncontested Facts, Ex. B, at ¶ 1.)

7.      Plaintiff agrees with each statement set forth in paragraph 7.  Plaintiff notes that paragraph 7 omits the underlined text below from its quotation of paragraph 11 of the FAC without including an ellipsis:

> . . . Defendant Martin acted under color of law . . . within the course and scope of his employment <u>by CMS</u>.

(*Id.*, at ¶ 11.)

8.      Plaintiff agrees with each statement set forth in paragraph 8.

9.      Plaintiff agrees with each statement set forth in paragraph 9.

10.      Plaintiff agrees with each statement set forth in paragraph 10.

11.      Plaintiff agrees with each statement set forth in paragraph 11 and its accompanying footnote.

12.     Plaintiff agrees with each statement set forth in paragraph 12.

13.     Plaintiff agrees with each statement set forth in paragraph 13.

14.     Plaintiff disagrees with the statements and characterizations set forth in paragraph 14, which are overbroad, vague, and ambiguous, except that Plaintiff does not dispute the contents of the paragraphs of the FAC, which he has quoted below.

In particular, Plaintiff disagrees with Defendants' first sentence in paragraph 114 insofar as Defendants assert that Plaintiff alleges medical personnel at South Woods State Prison ("SWSP") "treated" Plaintiff "on an almost daily basis."  To the contrary, Plaintiff does not allege that SWSP medical personnel "treated" him on July 17, 2008, through July 20, 2008, or on July 23, 2008, through July 25, 2008, although he alleges medical personnel at SWSP did "see" him on all of those days except July 23 and July 24.  (*See* Statement of Uncontested Facts, Ex. B, at ¶¶ 34, 35, 37–40, 42–45.)  Further, according to Plaintiff's allegations, on July 21, 2008, the only "treatment" that occurred was that Dr. Allan Martin prescribed Plaintiff a nutritional supplement.  (*Id.* at ¶ 41.)  Moreover, Plaintiff's allegations in paragraph 42 of the FAC make explicit that Dr. Martin and SWSP medical personnel failed to "treat" Plaintiff from July 18 through July 21, as follows:

> Despite observing and noting Plaintiff's obvious medical needs, Dr. Martin discharged Plaintiff to the prison's general population on July 21, 2008; Plaintiff was thus discharged from the infirmary a mere three days after having arrived with orders to be placed in the infirmary, given IV hydration and medication and a lab test, ***without***

4

> ***having been provided any IV treatment*** and without medical staff obtaining the necessary blood sample for laboratory analysis.

(*Id.* at ¶ 42 (emphasis added).)

Plaintiff does not dispute that the FAC alleges as follows:

> 34. On or about July 17, 2008, following Plaintiff's admission to the SWSP infirmary, Gail Willet, RN, noted Plaintiff's present symptoms and history of ulcerative colitis during infirmary rounds; Nurse Willet further noted that CMS medical staff attempted to start IV fluids but abandoned the effort after several failed attempts.

> 35. On or about July 17, 2008, Lisa Renee Mills, RN, NP, directed via telephone order that Plaintiff be treated with oral and IV fluids for dehydration; this direction was noted in Plaintiff's EMR by Clevelyn Ricalde, RN.

> * * *

> 37. On or about the early morning of July 18, 2008, Linda Bigay, RN, attempted unsuccessfully to start Plaintiff on IV hydration at SWSP ECU Infirmary during rounds. Nurse Bigay recorded Plaintiff's weight as 139 pounds and noted "increased" symptoms of ulcerative colitis in his EMR. James R. Welch, RN, also noted Plaintiff's weight as 139 pounds as well as ongoing gastrointestinal problems during rounds in the infirmary later that day.

> 38. Plaintiff was thereafter seen on or about July 18, 2008, by Defendant Dr. Allan Martin for the first time; Defendant Martin noted Plaintiff's specific complaints related to symptoms of UC in the EMR chart. Plaintiff was seen again by Nurse Clevelyn Ricalde during infirmary rounds on or about July 18, 2008.

> 39. Plaintiff was observed by Nurse Mildred Johansen at infirmary rounds during the early morning hours on or

about July 19, 2008. During later infirmary rounds the same day, Nurse Stephanie Smith noted Plaintiff's ongoing complaints of difficulty eating, abdominal pain and diarrhea. Plaintiff was seen later on the same date by Nurse Christina Gray during infirmary rounds in the ECU.

40. Plaintiff was seen by Nurse James R. Welch on or about July 20, 2008, during the early morning hours. Nurse Welch noted Plaintiff's complaint of abdominal pain and diarrhea with blood and recorded Plaintiff's weight as 139 pounds in his EMR. Plaintiff was seen later the same day by Nurse Stephanie Smith, who noted that he was "weak appearing" and "tolerating little foods" in the EMR. Plaintiff was thereafter seen later on the same day by Nurse Christina Gray, who noted Plaintiff's complaints of "inability to eat" as well as "UC and continued diarrhea" in his EMR.

41. Plaintiff was seen by Nurse Linda Bigay at infirmary rounds on or about July 21, 2008, during the early morning hours. Plaintiff was thereafter seen later the same day by Defendant Dr. Martin who, upon information and belief, prescribed Plaintiff a nutritional supplement. Plaintiff was seen later the same day by Nurse James R. Welch before ultimately being seen again by Defendant Dr. Martin. Dr. Martin noted in Plaintiff's EMR chart that Plaintiff complained of diarrhea, fatigue, malaise, melena, bloody stools, and abdominal pain.

* * *

43. On or about July 23, 2008, Sharon Levin, RN, NP, entered a summary of the consultation report from Bergen Regional Medical Center ("BRMC") reflecting Plaintiff's hospitalization and positive response to treatment in May of 2008 into Plaintiff's EMR medical chart.

44. On or about July 24, 2008, Narrissa Pierce, RN, entered a chart note for chart review into Plaintiff's EMR medical chart.

45. On or about July 25, 2008, Plaintiff was seen at sick call by Mary Ellen Green, RN for rectal bleeding, weakness and poor appetite. Nurse Green noted in Plaintiff's chart that Nurse Practitioner F. Green spoke with Plaintiff regarding his treatment plan and a GI consult and labs which had purportedly been ordered.

* * *

47. At some point between July 25, 2008, and August 1, 2008, inclusive, one of the CMS nurses was able to obtain blood sample from Plaintiff which was then sent for laboratory analysis.

(Statement of Uncontested Facts, Ex. B, at ¶¶ 34, 35, 37–41, 43–45, 47.)

15.    Plaintiff does not dispute that paragraph 34 of the FAC states that "Nurse Willet further noted that CMS medical staff attempted to start IV fluids but abandoned the effort after several failed attempts." (Statement of Uncontested Facts, Ex. B, at ¶ 34.)

Plaintiff does not dispute that Defendants may have had difficulty starting a peripheral IV line.

Except as stated above, Plaintiff disagrees with the statements set forth in paragraph 15.  In particular, Plaintiff does not agree that Defendants were unable to start a central sub-clavian IV line.

To the contrary, Dr. Martin testified:

Q.    Is there any other way to start an IV when no peripheral veins are available?

7

A.      There are other avenues, yes.

Q.      What are the other avenues?

A.      You can do a subclavian. You can do a internal jugular. You can do a cut-down. Put in a -- what's called a percutaneous intravenous catheter. So there are other avenues available.

Q.      Are those avenues that would be available to an inmate at South Woods State Prison?

A.      A jugular is possible. Some of the catheters could possibly reach an internal jugular. Other than that -- do either internal or external jugular. Other than that, if that's not available, you have to go to the hospital.

Q.      So would it be fair to say that Mr. Muniz could have gotten intravenous hydration had he been referred to a hospital?

A.      If he had not been able to take any oral hydration, then yes. But he was able to do this.

(Statement of Uncontested Facts, Ex. C, at 167-68 ("Martin Transcript").)

16.     Plaintiff agrees with each statement set forth in paragraph 16.  Plaintiff believes Defendants should have also cited paragraph 33 of the FAC.

17.     In the first sentence, Plaintiff disagrees with the characterization of his allegations of serious medical neglect by Dr. Martin and the harm it caused to him as "generalized." Plaintiff amply details these allegations throughout the FAC. (*See, e.g., id.* at ¶¶ 42, 49-52.)

Plaintiff does not dispute the second sentence of this paragraph, but notes that

he has since withdrawn his claims that Defendants (including Dr. Martin) violated his First Amendment rights.

18.    Plaintiff disagrees with the statements set forth in paragraph 18, except that Plaintiff does not dispute that he had previously alleged retaliation-related mistreatment by Dr. Martin, although the claims based on such treatment have now been voluntarily dismissed.

19.    Plaintiff agrees with each statement set forth in paragraph 19, except that Plaintiff disagrees that his ulcerative colitis "necessitated" his two surgeries at St. Francis Medical Center. The essence of this case is that Plaintiff contends that Dr. Martin's deliberate indifference to his serious medical needs is what necessitated those life-altering surgeries. (*See generally* FAC.)

20.    Plaintiff agrees with each statement set forth in paragraph 20, although the claims based on such a policy or custom of CMS have now been voluntarily dismissed.

21.    Plaintiff does not dispute the statements set forth in paragraph 21, although the claims based on such a policy or custom of CMS have now been voluntarily dismissed.

22.    Plaintiff does not dispute the statements set forth in paragraph 22, although the claims based on such a policy or custom of CMS have now been voluntarily dismissed.

23.     Plaintiff agrees with each statement set forth in paragraph 23, although the latter two claims have now been voluntarily dismissed.

24.     Plaintiff agrees with each statement set forth in paragraph 24.

25.     Plaintiff agrees with each statement set forth in paragraph 25.

26.     Plaintiff agrees with each statement set forth in paragraph 26.

27.     Plaintiff agrees with each statement set forth in paragraph 27.

28.     Plaintiff agrees with each statement set forth in paragraph 28.

29.     Plaintiff agrees with each statement set forth in paragraph 29.

30.     Plaintiff agrees with each statement set forth in paragraph 30.

31.     Plaintiff agrees with each statement set forth in paragraph 31.

32.     Plaintiff agrees with each statement set forth in paragraph 32.

33.     Plaintiff agrees with each statement set forth in paragraph 33.

34.     Plaintiff agrees with each statement set forth in paragraph 34.

35.     Plaintiff agrees with each statement set forth in paragraph 35.

36.     Plaintiff agrees with each statement set forth in paragraph 36.

37.     Plaintiff agrees with each statement set forth in paragraph 37.

38.     Plaintiff agrees with each statement set forth in paragraph 38.

39.     Plaintiff agrees with each statement set forth in paragraph 39.

40.     Plaintiff agrees with each statement set forth in paragraph 40.

41.     Plaintiff agrees with each statement set forth in paragraph 41.

42.   Plaintiff agrees with each statement set forth in paragraph 42.

43.   Plaintiff agrees with each statement set forth in paragraph 43.

44.   Plaintiff agrees with each statement set forth in paragraph 44.

45.   Plaintiff agrees with each statement set forth in paragraph 45.

46.   Plaintiff agrees with each statement set forth in paragraph 46.

47.   Plaintiff agrees with each statement set forth in paragraph 47.

48.   Plaintiff agrees with each statement set forth in paragraph 48.

49.   Plaintiff agrees with each statement set forth in paragraph 49.

50.   Plaintiff agrees with each statement set forth in paragraph 50.

51.   Plaintiff agrees with each statement set forth in paragraph 51.

52.   Plaintiff agrees with each statement set forth in paragraph 52.

53.   Plaintiff agrees with each statement set forth in paragraph 53.

54.   Plaintiff agrees with each statement set forth in paragraph 54.

55.   Plaintiff agrees with each statement set forth in paragraph 55.

56.   Plaintiff agrees with each statement set forth in paragraph 56.

57.   Plaintiff agrees with each statement set forth in paragraph 57.

58.   Plaintiff agrees with each statement set forth in paragraph 58.

59.   Plaintiff agrees with each statement set forth in paragraph 59.

## Testimony of Allan Martin, M.D.

60.    Plaintiff agrees with each statement set forth in paragraph 60.

61.    Plaintiff agrees with each statement set forth in paragraph 61.

62.    Plaintiff agrees with each statement set forth in paragraph 62.

63.    Plaintiff agrees with each statement set forth in paragraph 63.

64.    Plaintiff agrees with each statement set forth in paragraph 64.

65.    Plaintiff agrees with each statement set forth in paragraph 65.

66.    Plaintiff agrees with each statement set forth in paragraph 66.

67.    Plaintiff agrees with each statement set forth in paragraph 67, except that Plaintiff believes the citation should include pages 133 and 134 of the Transcript of the Deposition of Allan Martin, M.D. (Statement of Uncontested Facts, Ex. C ("Martin Transcript").)

68.    Plaintiff agrees that Dr. Martin testified as set forth in paragraph 68. Plaintiff disagrees with paragraph 68 to the extent it implies that Plaintiff was in good medical condition on July 17, 2008.

Plaintiff's expert, Dr. Brian Turner, reviewed Plaintiff's SWSP medical records from July 17, 2008, and noted that Plaintiff's comments of that day were summarized as follows:

> I/M [inmate] states that he has bleeding rectally for a month. I/M states that he has no appetite. States that he has no vomited bleed but states he "has the taste of blood in his mouth". I/M states that his heart starts to race and

> he gets frequent chest pain.  I/M denies chest pain at this
> time.  I/M states that his eyes are hurting and states they
> are hurting now.

(Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary

Judgment, Ex. 1, Expert Medical Opinion Report of Brian G. Turner, MD ("Turner

Expert Medical Report"), at 7–8.)   Dr. Turner stated that "*[t]hese statements

indicated the severity of dehydration and disease.  Additionally, eye pain can be

experienced in individuals with inflammatory bowel disease due to developing

autoimmune disorder of the eye*.  The comment by Mr. Soto-Muniz that his heart is

racing again implies tachycardia and dehydration." (*Id.* at 8 (emphasis in original).)

69.   Plaintiff agrees with each statement set forth in paragraph 69.

70.   Plaintiff agrees with each statement set forth in paragraph 70.

71.   Plaintiff agrees with the statements set forth in paragraph 71 and their

accompanying citations, except that Plaintiff does not agree with Defendants'

statement that "other than the tenderness in the lower abdomen, the exam [was]

normal."

With respect to Dr. Martin's examination of Plaintiff on July 18, 2008, Dr.

Turner stated as follows:

> At that point, the patient complains of diarrhea, blood in
> the stool, and abdominal pain.  He reports frequent stools.
> On exam there is abdominal tenderness.  He is given
> hydrocodone and oral prednisone to take due to continued
> lack of IV access.  *The patient's health was clearly
> deteriorating in the early morning, but it was not until*

13

> many hours later he underwent assessment by a physician
> to receive recommendations.  *Unfortunately, there was*
> *still no IV access to facilitate the administration of IV*
> *steroids (prednisone) or hydrating fluids.  These two*
> *elements are critical to the treatment of Mr. Soto-Muniz's*
> *ulcerative colitis and dehydration.  The treating provider*
> *is aware of this fact, and noted it on prior requests in the*
> *chart for the patient to receive these treatments.*

(Turner Expert Medical Report at 9 (emphasis in original).)

72.    Plaintiff agrees with each statement set forth in paragraph 72.

73.    Plaintiff agrees that Dr. Martin testified as set forth in paragraph 73, except that Plaintiff does not agree that Dr. Martin testified that "Plaintiff was started on supportive treatment" on July 18, 2007.

Plaintiff also disagrees with paragraph 73 to the extent it asserts that hydration by mouth was a sufficient treatment for Plaintiff on July 18, 2007.  As Dr. Turner stated in his expert report, IV steroids (prednisone) and IV hydrating fluids were "*critical to the treatment of Mr. Soto-Muniz's ulcerative colitis and dehydration.*" (Turner Expert Medical Report at 9.)

74.    Plaintiff agrees that Dr. Martin testified as set forth in paragraph 74. However, Plaintiff disagrees with the substance of Dr. Martin's testimony as set forth in paragraph 74.

First, as Dr. Turner stated in his expert report, IV steroids (prednisone) and IV hydrating fluids were "*critical to the treatment of Mr. Soto-Muniz's ulcerative colitis and dehydration.*"  (Turner Expert Medical Report at 9 (emphasis in

14

original).)  Furthermore, in his rebuttal expert report, Dr. Turner states as follows:

> The difficulty of placing an IV is worsened when individuals are dehydrated, which emphasizes the need to access the veins to provide fluids.  Furthermore, as medical providers, we are responsible for providing optimal care to patients, and while the patient may have had challenging venous access due to prior drug use, **_alternatives to peripheral IV access exist (e.g., central venous access) and should be employed in cases such as Mr. Soto-Muniz's._**

(Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, Ex. 2, Report of Expert Medical Opinion of Dr. Brian Turner: Rebuttal to Expert Reports of Dr. Larry Borowsky and Dr. Nathaniel Evans ("Turner Rebuttal Report"), at 1 (emphasis added).)

75.    Plaintiff disagrees with the entirety of paragraph 75, except does not dispute that Dr. Martin could have had Plaintiff transferred to a hospital in order to receive IV hydration through a sub-clavian line.

Specifically, Plaintiff disagrees with the assertion that IV hydration was "not necessary" because "Plaintiff was able to and did in fact take hydration orally." As noted in paragraph 75, _supra_, Dr. Turner considered IV hydrating fluids "_critical to the treatment of Mr. Soto-Muniz's ulcerative colitis and dehydration_." (Turner Expert Medical Report at 9 (emphasis in original).) Plaintiff's persistent tachycardia and rapid weight loss would have alerted a physician to the fact that oral fluid intake was insufficient to treat his condition. (_Id._ at ¶¶ 15, 17, 19, 21.)

76.     Plaintiff agrees with each statement set forth in paragraph 76.

77.     Plaintiff does not dispute the first sentence of paragraph 77. Plaintiff agrees that Dr. Martin testified as set forth in paragraph 77.

78.     Plaintiff agrees with each statement set forth in paragraph 78.

79.     Plaintiff agrees with each statement set forth in paragraph 79.

80.     Plaintiff agrees with each statement set forth in paragraph 80.

81.     Plaintiff does not dispute the first sentence of paragraph 81. Plaintiff does not dispute that Dr. Martin testified as set forth in the second sentence.

82.     Plaintiff agrees with each statement set forth in paragraph 82.

83.     Plaintiff agrees that Dr. Martin testified as set forth in paragraph 83.

84.     Plaintiff agrees that Dr. Martin testified as set forth in paragraph 84.

85.     Plaintiff agrees that Dr. Martin testified as set forth in paragraph 85.

86.     Plaintiff does not dispute that Dr. Martin testified that ulcerative colitis is a disease that can be controlled medically. Plaintiff does not dispute that Dr. Martin testified as set forth in the last two sentences of paragraph 86.

87.     Plaintiff agrees that Dr. Martin testified as set forth in paragraph 87.

88.     Plaintiff agrees that Dr. Martin testified as set forth in paragraph 88.

89.     Plaintiff agrees that Dr. Martin testified as set forth in paragraph 89.

90.     Plaintiff does not dispute the statements in paragraph 90, except would add that Dr. Martin also testified that "there would be concern" regarding the

condition of Plaintiff based on the notes in the same sick call entry dated July 25, 2008. (Statement of Uncontested Facts, Ex. C, at 227 ("Dr. Martin Transcript").)

91.    Plaintiff agrees with each statement set forth in paragraph 91.

92.    Plaintiff agrees with each statement set forth in paragraph 92.

93.    Plaintiff agrees that Dr. Martin testified as set forth in paragraph 93.

94.    Plaintiff does not dispute that Dr. Martin testified as set forth in the first sentence of paragraph 94.

Despite Dr. Martin's testimony that Plaintiff's weight was "stable" on August 1, 2008, noted in the third sentence, Plaintiff's weight had been and was continuing to drop at that point. As noted by Dr. Martin, Plaintiff weighed 148 lbs. on July 10, 2008 -- the day he was transferred into correctional custody – and his weight had dropped sharply to 137 lbs. on August 1, 2008, the day Dr. Martin discharged him from the infirmary and sent him back into the general prison population for the second time. (*Id.* at 252, 254.)

On August 1, 2008, Plaintiff reported to Nurse Fran Green that he was having "greater than 15 bowel movements a day" and that they were bloody. (*Id.* at 242.) This belies Dr. Martin's testimony, noted in the second sentence, that during his examination of Plaintiff on that date, he did not find "anything acute going on that warranted [Plaintiff] to be in [the infirmary]." (*Id.* at 247.)

95.    Plaintiff agrees with each statement set forth in paragraph 95.

17

96.   Plaintiff agrees that Dr. Martin testified as set forth in paragraph 96.

97.   Plaintiff agrees that Dr. Martin testified as set forth in paragraph 97. As noted in paragraph 94 of this Responsive Statement of Material Facts, *supra*, Plaintiff disagrees that on August 1, 2008, he was "stable enough" to be transferred out of the infirmary and back into the general prison population by Dr. Martin.

98.   Plaintiff agrees with each statement set forth in paragraph 98.

99.   Plaintiff agrees with each statement set forth in paragraph 99. Plaintiff would add that Nurse Fran Green also called Dr. Martin on August 6, 2008 and told him that Plaintiff's rectal "bleeding had not subsided." (*Id.* at 265.)

100.   Plaintiff agrees with each statement set forth in paragraph 100.

101.   Plaintiff agrees that Dr. Martin testified as set forth in paragraph 101.


**Testimony of Fran Green, NPC**

102.   Plaintiff agrees with each statement set forth in paragraph 102.

103.   Plaintiff agrees with each statement set forth in paragraph 103.

104.   Plaintiff does not dispute the characterization of Nurse Green's testimony regarding Plaintiff's symptoms on August 1, 2008. Plaintiff does not agree that Nurse Green testified that she "performed a rectal exam at that time, and . . . found no blood." Rather, Nurse Green testified that she performed "a digital rectal exam, [and] when I withdrew my finger, . . . there was no red blood on my finger."

(Statement of Uncontested Facts, Ex. I, at 75 ("Fran Green Transcript").)

105.   Plaintiff disagrees with paragraph 105. Rather, Nurse Green answered affirmatively to the question of, "[D]oes a history of IV drug use *sometimes* make it difficult to get a vein for IV treatment for an inmate?" (*Id.* at 129 (emphasis added).)

106.   Plaintiff agrees with each statement set forth in paragraph 106.

107.   Plaintiff does not dispute that Nurse Green testified as set forth in paragraph 107. However, Plaintiff disagrees with the apparent implication that oral hydration alone was sufficient to treat Plaintiff's severe dehydration.

As Dr. Turner stated in his expert report, as early as July 20, 2008, Plaintiff had already been suffering "from poor oral intake for at least a week." (Turner Expert Medical Report at ¶ 20.) Regarding the state of Plaintiff's health on July 21, 2008, Dr. Turner stated that "Even without a GI consult, a medical doctor would recognize the degree of dehydration and have admitted the patient to an inpatient facility for further management." (*Id.* at ¶ 21.)

108.   Plaintiff agrees with each statement set forth in paragraph 108.

109.   Plaintiff agrees with each statement set forth in paragraph 109.

110.   Plaintiff agrees with each statement set forth in paragraph 110.

111.   Plaintiff agrees that Nurse Green testified as set forth in paragraph 111.

112.   Plaintiff agrees that Nurse Green testified as set forth in paragraph 112.

## Testimony of Madanmohan R. Patel, M.D.

113.   Plaintiff agrees that Madanmohan R. Patel, M.D., and his staff treated Plaintiff at BRMC in or around May 2008.  (Statement of Uncontested Facts, Ex. E (Doc. No. 113-11) (Transcript of Deposition of Madanmohan Patel, M.D. ("Patel Transcript")), at 10:21–10:25, 36:14–18.)

Plaintiff notes that the portion of the record Defendants cite, page 7 of the Patel Transcript, does not establish that Dr. Patel ever treated Plaintiff at BRMC. Instead, page 7 of the Patel Transcript merely establishes that Dr. Patel worked at BRMC as of the date of his deposition, July 23, 2012.

Except as set forth above, Plaintiff disagrees with paragraph 113.

114.   Plaintiff agrees with each statement set forth in paragraph 114, except Plaintiff believes the final citation should be to the Patel Transcript at 28:21–25.

115.   Plaintiff agrees with each statement set forth in paragraph 115.

116.   Plaintiff does not dispute the statements set forth in paragraph 116.

117.   Plaintiff agrees with each statement set forth in paragraph 117.

118.   Plaintiff agrees with each statement set forth in paragraph 118.

119.   Plaintiff disagrees with the first sentence in paragraph 119 and its accompanying citation because Dr. Patel did not testify that in the "absence" of an available IV line, he could give the patient liquids orally.

Plaintiff disagrees with the second sentence in paragraph 119 and its

20

accompanying citation because Dr. Patel did not testify that "if an IV line could not

be started," then he would hydrate through other means.

Dr. Patel testified as follows:

> Q.     And how do you think he would have responded if
> you had not given [him the IV line]?
>
> A.     Well, I could have given oral liquids or oral
> antibiotic if he had **refused** IV line, but IV line is
> preferable.
>
> Q.     Why is it preferable?
>
> A.     To get recovery faster.
>
> Q.     So that's in regard to the antibiotics.  What about in
> getting fluid to the patient?
>
> A.     Fluids, yeah.
>
> Q.     The central line is the fastest way to get fluids?  The
> IV is the fastest way to get fluids?
>
> A.     Not central line, any IV access, either peripheral or
> central.
>
> Q.     Is it ever possible that you cannot get an IV access
> to hydrate a patient?
>
> A.     Yeah.
>
> Q.     What would be the circumstances for that,
> generally?
>
> A.     ***If the patient refused to get IV line, then we have
> to hydrate through other means.***
>
> Q.     What are the other means of [hydration]?

21

> A.    Encourage oral liquids.
>
> Q.    If oral liquids weren't working?
>
> A.    **Then we have to encourage IV line.**

(Patel Transcript at 47:13–48:15 (emphasis added).)

Plaintiff agrees with paragraph 119 insofar as it acknowledges that Dr. Patel testified that an IV line delivers antibiotics and fluids faster than oral liquids. (*See id.* at 47:16–48:6.) Further, Plaintiff agrees with paragraph 119 insofar as it acknowledges that Dr. Patel testified that "[i]f the patient refused to get IV line, then we have to hydrate through other means" (*see id.* at 48:13–15) and that "other means" meant to encourage oral liquids (*see id.* at 48:16–18). For the reasons set forth above, Plaintiff disagrees with all other assertions in, and implications of, paragraph 119.

120.    Plaintiff agrees with each statement set forth in paragraph 120.

121.    Plaintiff agrees that the statements set forth in paragraph 121 constitute an accurate representation of Dr. Patel's testimony.

122.    Plaintiff agrees with each statement set forth in paragraph 122.

123.    Plaintiff agrees with each statement set forth in paragraph 123.

124.    Plaintiff agrees with each statement set forth in paragraph 124.

125.    Plaintiff agrees with each statement set forth in paragraph 125.

**<u>Testimony of Brian Shrager, M.D.</u>**

126.   Plaintiff agrees with each statement set forth in paragraph 126.

127.   Plaintiff agrees with each statement set forth in paragraph 127.

128.   Plaintiff does not dispute the statements set forth in paragraph 128.

129.   Plaintiff agrees that Dr. Shrager testified as set forth in paragraph 129.

130.   Plaintiff agrees with each statement set forth in paragraph 130.

131.   Plaintiff agrees with each statement set forth in paragraph 131.

132.   Plaintiff agrees with each statement set forth in paragraph 132.

133.   Plaintiff agrees with each statement set forth in paragraph 133.

134.   Plaintiff agrees with each statement set forth in paragraph 134.

135.   Plaintiff agrees with each statement set forth in paragraph 135.

136.   Plaintiff agrees with each statement set forth in paragraph 136.

137.   Plaintiff agrees with each statement set forth in paragraph 137.

138.   Plaintiff disagrees that Dr. Shrager testified that "the bulk of the Plaintiff's current and ongoing problems" are due to his not receiving a third surgery to reverse the ileostomy. (Statement of Uncontested Facts, Ex. B, at ¶ 138.)

Dr. Shrager testified as follows:

> Q.   Okay.
>
> A.   I hear about it from the medical-legal side that he is seeking damages from multiple doctors in the prison, et cetera, et cetera. And my initial response as a clinician is, Well -- well, when I delve into why he's [Plaintiff] so

23

unhappy, it becomes about this ileostomy, and my
response as a clinician is, Well, it's a temporary ileostomy.
Why don't we -- why hasn't he just had that reversed?

Q.    Right.

A.    So . . .

Q.    To minimize his damages and, obviously, his
ongoing damages and complaints in the future; correct?

A.    Well, his problem is a very fixable one, surgically.
His complaints are -- we could ad- -- it can be addressed
very -- very readily with clinical care. That's been my
feeling. As opposed to medical-legal action.

(Statement of Uncontested Facts, Ex. F, at 76-77 ("Dr. Shrager Transcript").)

Plaintiff disagrees with the suggestion that Dr. Shrager offered a medical

opinion in the portion quoted above regarding what was causing the "bulk" of

Plaintiff's problems. Dr. Shrager's "delving" into "why Plaintiff is so unhappy" does

not amount to such a medical opinion. Rather, Dr. Shrager merely testified that the

problem *of the ileostomy* "is a very fixable one, surgically", in his opinion. (*Id.*)

139.   Plaintiff agrees with each statement set forth in paragraph 139.

140.   Plaintiff agrees with each statement set forth in paragraph 140.

141.   Plaintiff agrees with each statement set forth in paragraph 141.

142.   Plaintiff agrees with each statement set forth in paragraph 142.

143.   Plaintiff agrees with each statement set forth in paragraph 143.

144.   Plaintiff agrees with each statement set forth in paragraph 144.

145.   Plaintiff agrees with each statement set forth in paragraph 145.

## **Testimony of Lionel Anicette, M.D.**

146.   Plaintiff agrees with each statement set forth in paragraph 146.

147.   Plaintiff agrees with each statement set forth in paragraph 147.

148.   Plaintiff agrees with each statement set forth in paragraph 148.

149.   Plaintiff agrees with each statement set forth in paragraph 149.

150.   Plaintiff agrees with each statement set forth in paragraph 150.

151.   Plaintiff agrees with each statement set forth in paragraph 151.

152.   Plaintiff agrees with each statement set forth in paragraph 152.

153.   Plaintiff agrees with each statement set forth in paragraph 153.

154.   Plaintiff agrees with each statement set forth in paragraph 154.

155.   Plaintiff agrees with each statement set forth in paragraph 155.

156.   Plaintiff agrees with each statement set forth in paragraph 156.

157.   Plaintiff agrees with each statement set forth in paragraph 157.

158.   Plaintiff agrees with each statement set forth in paragraph 158.

159.   Plaintiff agrees with each statement set forth in paragraph 159.

160.   Plaintiff agrees with each statement set forth in paragraph 160.

161.   Plaintiff agrees with each statement set forth in paragraph 161.

## <u>Testimony of Yasser Soliman, M.D.</u>

162.   Plaintiff agrees with each statement set forth in paragraph 162.

163.   Plaintiff agrees with each statement set forth in paragraph 163.

164.   Plaintiff disagrees with that characterization of Dr. Soliman's testimony. The issue of whether Dr. Soliman was ever "called upon to investigate any issues at South Woods involving Dr. Martin" was never directly raised by counsel, and therefore never answered by Dr. Soliman. (Statement of Uncontested Facts, Ex. H, at 26-27 ("Dr. Soliman Transcript").)

165.   Plaintiff agrees with each statement set forth in paragraph 165.

166.   Plaintiff agrees with each statement set forth in paragraph 166.

167.   Plaintiff agrees with each statement set forth in paragraph 167.

168.   Plaintiff agrees with each statement set forth in paragraph 168.

169.   Plaintiff agrees with each statement set forth in paragraph 169.

170.   Plaintiff disagrees with this statement. Plaintiff testified that the majority of "consults" met criteria and were approved, not "referral requests." (Statement of Uncontested Facts, Ex. H, at 106 ("Dr. Soliman Transcript"))

171.   Plaintiff agrees with each statement set forth in paragraph 171.

172.   Plaintiff agrees with each statement set forth in paragraph 172.

173.   Plaintiff agrees with each statement set forth in paragraph 173.

## Testimony of James M. Courtney

174. Plaintiff agrees with each statement set forth in paragraph 174.

175. Plaintiff agrees with each statement set forth in paragraph 175.

176. Plaintiff agrees with each statement set forth in paragraph 176.

177. Plaintiff agrees with each statement set forth in paragraph 177.

## Testimony of Elvis Soto-Muniz

178. Plaintiff agrees with each statement set forth in paragraph 178.

179. Plaintiff agrees with the statements set forth in paragraph 179, except that Plaintiff believes the citation should be to the Transcript of the Deposition under Oral Examination of Elvis Muniz (Statement of Uncontested Facts, Ex. D ("Soto-Muniz Transcript") at 38:10–39:16.)

180. Plaintiff agrees with each statement set forth in paragraph 180. Plaintiff clarifies that his testimony did not occur in 1989, but, instead, the events he described in the testimony began in 1989.

181. Plaintiff agrees with each statement set forth in paragraph 181.

182. Plaintiff agrees with each statement set forth in paragraph 182.

183. Plaintiff agrees with each statement set forth in paragraph 183.

184. Plaintiff agrees with each statement set forth in paragraph 184.

185. Plaintiff agrees with each statement set forth in paragraph 185. Plaintiff

adds that he also testified that he took captopurine to help him with his ulcerative colitis at some time prior to May 2008.  (Soto-Muniz Transcript at 106:10–107:17.)

186.   Plaintiff agrees with the statements set forth in paragraph 186, although Plaintiff notes that more context is necessary to understand fully the portion of the record Defendants quote.  For sake of clarity, Plaintiff reproduces the full testimony below:

> Q.    So what would you do if the refills ran out?
>
> A.    There was times I didn't take the medication if I didn't have it.  Until I got it again I didn't.
>
> Q.    And you would get it again when you had --
>
> A.    If it acted up again and I went to the hospital, then yeah.
>
> * * *
>
> Q.    So you would initially get the prescription as a result of one of your hospitalizations, correct?
>
> A.    Correct.
>
> Q.    Okay.  That prescription, would it always have refills with it?
>
> A.    Well, they took me off the Prednisone.  They wean you off of that.  I was done with that.
>
> Q.    Right.
>
> A.    Then the [captopurine], I was also taken off of that. The Rowasa, I had that for awhile.  Also I believe that had stopped.

28

Q.      Stopped meaning they took you off of it?

A.      They didn't offer it.   That was an enema type medication.  So I don't think that was for long.  And the Asacol, I took it and took it and yeah, and I would, if I didn't have it I wouldn't take it.  And if it was prescribed again I would fill it and use it again.

* * *

Q.      So some of the medications that you had been prescribed at one point in time you were taken off of, correct?

A.      Correct.

Q.      Other medications, the prescriptions ran out, correct?

A.      Correct.

Q.      Okay.  And the prescriptions ran out so then you wouldn't be taking any medication for a period of time, correct?

A.      Correct.

Q.      You would experience a flare-up and then you would present to the hospital again, correct?

A.      Correct.

Q.      Okay.  And then when going to the hospital again you would then be treated and be given new prescriptions for medications?

A.      Yeah.

Q.      And then the same thing, those prescriptions would

run out, you'd have a period of time of not having medication, and then you would experience a flare-up, correct?

A.    Well, there was a period of time, long periods of times where I didn't have flare-ups or anything like that.

* * *

A.    Well, I would go periods, I don't know it was with the medications or without it, but I would have long periods of taking medications, not taking it, and even when I didn't take it it was still a long time before I had a flare-up.  It wasn't like I stopped and immediately I would get a flare-up.  That's not what happened with me.  It wouldn't go like that.

Q.    There were periods of time you would go several years without a flare-up?

A.    Yes.

(Soto-Muniz Transcript at 108:17–25, 109:15–110:10, 110:24–111:24, 112:6–16.)

187.   Plaintiff disagrees with each statement set forth in paragraph 187.

For the purpose of reference, Plaintiff actually testified as follows, never stating that he "believes that in the two weeks prior to being admitted to BRMC, he was not taking any medication":

Q. Okay. Had you been taking medication in the period of time from when you entered Bergen County jail before going to Bergen Regional Medical Center?

MR. HUDSON: Objection. You can answer.

A. I'm not sure if they were giving it to me before I went to Bergen Regional. I'm not sure if they gave it to me then

30

or after I came back out of Bergen Regional.

Q. Okay.

A. I can't be sure. I was getting it at some point. I don't know if it was after.

Q. Okay. I'm going to ask if this helps your recollection at all. There's a document entitled history and physical examination. It's a two-page document. On the first page under history of present illness it says that, ran out of medication and did not take any medication for the last two weeks. Do you recall that?

MR. HUDSON: Objection. And I would also ask counsel to specify what she's referring to.

MS. BRANDT: I just did specify what I was referring to. I said I was referring to the history of physical examination, page one, history and present illness.

MR. HUDSON: Right. And is that a Bergen County, Bergen Regional --

MS. BRANDT: Bergen Regional Medical Center history and physical examination, page one of two.

MR. HUDSON: Okay.

MS. BRANDT: History of present illness.

MR. HUDSON: Is there a date on that?

MS. BRANDT: On that sheet there's not, but there's a dictated date of May 9th, 2008 on the bottom of the second page.

MR. HUDSON: And just for the record, it's not for any reason other than the way we've been doing discovery in this case, we have a lot of documents and a lot of them

31

don't have bate stamp numbers --

MS. BRANDT: This one does. This particular page has a bates stamp number of Muniz 000005.

MR. HUDSON: Perfect.

A. Can you ask the question again, I'm sorry?

Q. It says in here that you had ran out of medication and did not take any medication for the last two weeks. Do you recall that?

MR. HUDSON: Objection. You can answer.

A. If it was two weeks prior to that I was already at Bergen County so I may be able – I don't think it was given to me before the hospitalization. Once I went to the hospital I was in Bergen County a little more than a week, so I guess I wasn't getting it there. I was taking that, I believe I was taking it awhile I was in the street before I got incarcerated. That's two weeks prior to Bergen Regional. I was already incarcerated in Bergen County. So they might not have given it to me and then I went to the hospital. And yeah, a week or so I didn't have it, maybe two weeks, I don't know. I don't know if it was before I went to the hospital.

(Soto-Muniz Transcript at 115:24–118:16.)

188.   Plaintiff agrees with each statement set forth in paragraph 188.

189.   Plaintiff agrees with each statement set forth in paragraph 189.

190.   Plaintiff agrees that he testified as follows:

Q.     At some point in time you got transferred to South Woods, correct?

A.     Yes.

32

(Soto-Muniz Transcript at 126:8–10.)  Except as stated above, Plaintiff disagrees with the statements set forth in paragraph 190.

191.   Plaintiff agrees with each statement set forth in paragraph 191.

192.   Plaintiff disagrees with the statements set forth in paragraph 192. Plaintiff did not testify that there was "no room" at the infirmary at the Central Reception and Assignment Facility ("CRAF").  Instead, Plaintiff testified that CRAF could not admit him to the CRAF infirmary "because they had people there with MRSA, which is contagious.  And they couldn't put me there." (Soto-Muniz Transcript at 130:8–11.)

193.   Plaintiff disagrees with the entirety of paragraph 193.

Specifically, Plaintiff disagrees with the first sentence set forth in paragraph 193, and Plaintiff disagrees with its accompanying citation.  Plaintiff testified that he did not recall SWSP personnel attempting to obtain IV access within the first days of his arrival at the SWSP infirmary, as follows:

> Q.     Okay.  Do you recall whether or not they attempted to get IV access on the date that you were admitted to the [SWSP] infirmary?
>
> * * *
>
> A.     I don't know.  I don't remember.  I'm not sure.
>
> Q.     Okay.  Do you recall them attempting to get IV access but having difficulty?
>
> A.     On that same date?

> Q.    Yes.
>
> A.    Not on that same day I don't remember that.
>
> Q.    When is it that you recall them first attempting to get IV access?
>
> A.    I think maybe a day or two afterwards.  I don't remember -- it was evening time -- I don't remember them doing that. ***They might have.  I don't know.  I don't recall that.***

(Soto-Muniz Transcript at 135:11–136:3 (emphasis added).)

Plaintiff disagrees with the second sentence set forth in paragraph 193, and Plaintiff disagrees with its accompanying citation.  Plaintiff testified that two SWSP personnel attempted to draw blood within his first days at the SWSP infirmary.  (*Id.* at 143:22–145:4.)  With respect to whether SWSP personnel attempted to obtain IV access within Plaintiff's first days at the SWSP infirmary, Plaintiff testified as follows:

> Q.    Okay.  Do you recall on that same day [Plaintiff's second day at the SWSP infirmary] whether or not they attempted to get an IV access for the purpose of giving IV fluids?
>
> A.    ***I always thought it was to draw blood.  I never saw an IV bag or the big needles for the IV.***  It was always to draw the blood, I assumed.  Then that once they get the blood they put the IV in.  But I never saw it with the bag. I always just knew they were trying to draw blood.  That's what they were trying to do first of all.

(*Id.* at 145:9–18 (emphasis added).)

34

Plaintiff disagrees with the third sentence set forth in paragraph 193, and Plaintiff disagrees with its accompanying citation.  Plaintiff testified as follows:

> Q.    Do you recall how many attempts were made ***to draw your blood*** from the time that you first got to the [SWSP] infirmary until you were released into the general population?
>
> A.    Maybe a couple of times.  I don't know an exact number.
>
> Q.    Are you able to approximate, two times, three times?
>
> A.    Two, three times.

(*Id.* at 148:12–20 (emphasis added).) Page 149 of the Soto-Muniz Transcript continues the discussion from page 148 about attempts to draw Plaintiff's blood, and page 149 does not include any testimony about attempts to start an IV line.  (*See generally id.* at 148–49.)

194.    Plaintiff agrees with each statement set forth in paragraph 194.

195.    Plaintiff agrees with each statement set forth in paragraph 195.  Plaintiff clarifies that he testified that SWSP personnel gave him 2Cal "at some point in time" once he was in the general population. (Soto-Muniz Transcript at 151:23–152:2, 152:13–17.)

196.    Plaintiff agrees with each statement set forth in paragraph 196.

197.    Plaintiff agrees with each statement set forth in paragraph 197.  Plaintiff clarifies that he testified that he submitted the sick call slip after he had been released

into the general population from the SWSP infirmary because "days went by without anything," and he was "getting worse." (Soto-Muniz Transcript at 155:11–156:14.)

198.   Plaintiff agrees with the statements set forth in paragraph 198, except that Plaintiff believes the citation is incorrect insofar as it refers to page 159 of the Soto-Muniz Transcript.

199.   Plaintiff agrees with each statement set forth in paragraph 199.

200.   Plaintiff agrees with each statement set forth in paragraph 200. Plaintiff clarifies that he testified that at the time Defendants are referring to in the first sentence of paragraph 200, Plaintiff saw both "Nurse Green" and a nurse practitioner. (Soto-Muniz Transcript at 169:13–170:2; *see id.* at 161:5–14 (Plaintiff distinguished between a "Nurse Green" and another "Green"; Defendants' counsel stated that there was a "Nurse Mary Ellen Green" and "a Fran Green who is a nurse practitioner").)

201.   Plaintiff agrees with each statement set forth in paragraph 201.

202.   Plaintiff agrees with each statement set forth in paragraph 202. (*See also* Soto-Muniz Transcript at 176:1–9.)

203.   Plaintiff agrees with the statements set forth in paragraph 203, except Plaintiff did not testify that "Fran Green" saw him at the time Defendants are referring to in the paragraph 203, which was the day Plaintiff was going to St. Francis Medical Center; Plaintiff only testified that a nurse practitioner saw him that day.

(Soto-Muniz Transcript at 176:13–177:1 (Defendants' counsel stated that the nurse practitioner's name was Fran Green).)

204.   Plaintiff agrees with each statement set forth in paragraph 204.

205.   Plaintiff agrees with each statement set forth in paragraph 205.

206.   Plaintiff agrees with each statement set forth in paragraph 206.  Plaintiff adds that he testified that he never consulted with any physicians with regard to removal of the ileostomy since he was released from SWSP in February 2009 "[b]ecause [he] can't afford to pay for it and [he knows] that Medicaid considers it a cosmetic surgery and they will not pay for it."  (Soto-Muniz Transcript at 200:15–24.)

207.   Plaintiff agrees with the statements set forth in paragraph 207, except that Plaintiff believes the citation should be to the Soto-Muniz Transcript at 230:12–21.

208.   Plaintiff agrees with the statements set forth in paragraph 208, except that Plaintiff believes the citation should be to the Soto-Muniz Transcript at 235:8–236:3.

209.   Plaintiff agrees with each statement set forth in paragraph 209.

210.   Plaintiff agrees with each statement set forth in paragraph 210.

211.   Plaintiff agrees with each statement set forth in paragraph 211.

212.   Plaintiff agrees with each statement set forth in paragraph 212.

37

Date: December 8, 2014                    Respectfully submitted,

                                          */s/ Richard P. Rinaldo*
                                          Richard P. Rinaldo
                                          *rrinaldo@rinaldolaw.com*
                                          **THE RINALDO LAW FIRM**
                                          1767 Morris Avenue, Suite 205
                                          Union New Jersey 07083
                                          Telephone: (908) 352-2500
                                          Facsimile: (908) 352-2770

                                          **REESE RICHMAN LLP**
                                          Kim E. Richman (admitted *pro hac vice*)
                                          *krichman@reeserichman.com*
                                          George V. Granade (admitted *pro hac vice*)
                                          *ggranade@reeserichman.com*
                                          875 Avenue of the Americas, 18th Floor
                                          New York, New York 10001
                                          Telephone: (212) 643-0500
                                          Facsimile: (212) 253-4272

                                          *Attorneys for Plaintiff Elvis Soto-Muniz*